Carl H. CANTONWINE and Juanita M. Cantonwine, husband and wife, Appellants (Defendants below),

v.

Winnibel FEHLING, a/k/a Winnibelle Fehling, a/k/a Winniebelle Fehling, Appellee (Plaintiff below).

Winnibel FEHLING, a/k/a Winnibelle Fehling, a/k/a Winniebelle Fehling, Appellant (Plaintiff below),

v.

Carl H. CANTONWINE and Juanita M. Cantonwine, husband and wife, Appellees (Defendants below).

Nos. 4848, 4849.

Supreme Court of Wyoming.

July 24, 1978.

Timothy S. Tarver, of Burgess & Davis, Sheridan, for Carl H. Cantonwine and Juanita M. Cantonwine.

Rex O. Arney, of Redle, Yonkee & Arney, Sheridan, for Winnibel Fehling.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

These appeals arise from a suit initiated by Winnibel Fehling (hereinafter the plaintiff) to collect $15,000.00 she claimed was due on certain promissory notes executed by Carl H. and Juanita M. Cantonwine (hereinafter the defendants) to the plaintiff and her husband. The trial court entered a summary judgment in favor of the plaintiff with respect to one-half of her claim, and a summary judgment in favor of the defendants with respect to the remainder of the claim. In addition, the trial court denied

defendants' motion to dismiss, finding that the Wyoming—and not the Colorado—statute of limitations applied to the cause of action. We will affirm in all respects.

On April 25, 1965, and March 9, 1966, respectively, the plaintiff's husband issued checks, drawn on a bank account held jointly with the plaintiff, to the defendants in the amounts of $5,000.00 and $10,000.00. On October 14, 1966, the plaintiff's husband forwarded a letter[1] to the defendants, in which he enclosed five $3,000.00 promissory notes[2] for the defendants' signatures. At all times relevant herein, the plaintiff and her husband were residents of the State of Colorado, while the defendants were residents of the State of Wyoming. The promissory notes, which were demand instruments dated October 1, 1966, at Salida, Colorado, were executed by the defendants in Wyoming and returned to the plaintiff's husband. The notes indicated they were payable at Salida, Colorado, with interest at six percent per annum, payable when the notes were paid. On October 20, 1966, the plaintiff's husband executed his Last Will and Testament, which provided, in ARTICLE EIGHT, that his executors were to forgive

"any indebtedness which the said CARL CANTONWINE, and/or his wife may owe me at the time of my death and to fully cancel and satisfy said indebtedness."

Subsequent to the death of plaintiff's husband, in 1968, the five promissory notes were assigned to the plaintiff by John M. Boyle and the plaintiff, acting as executor and executrix of the plaintiff's husband's estate. The notes had been included in their entirety as a part of the gross estate of plaintiff's husband for inheritance tax purposes. In 1973, plaintiff demanded payment of the notes from the defendants. Upon receiving a refusal to make payment, the plaintiff filed suit in the United States District Court for the District of Wyoming. This federal action was subsequently dismissed for lack of jurisdiction. *Fehling v. Cantonwine*, U.S.D.C.Wyo., 379 F.Supp. 1250, aff'd, 10 Cir., 522 F.2d 604. Thereaft-

1. The letter reads as follows:

"Oct 14–1966

"Dear Carl & Neta:
"Enclosed you will find 5 notes each for $3,000 which is the amount that I loaned you and I am trying to give this to you and as I can only give $3000 to you each year Mr. Roy Taroaldo Wall who is with Hanna & Nelson Income Tax Co. who has made out my In-

come tax for 20 years said this was the only way that I could give that amount of money to you without paying a tax on all of it. You and Neta sighn [sic] the five notes and I can forgive one each year but you can spend all of it this year. Sighn [sic] the notes & return them to me. I hope this will help you.
"s/ Sincerely Frank"

2. All five promissory notes were as follows:

"3000.00 Salida, Colo., October 1, 1966

"On demand – – – – – – – – – – – – – After date, I, We, or either of us promise to pay to Frank Fehling and Winniebell Fehling or order, Three Thousand & No/100 – – – – – – Dollars at Salida, Colorado, with interest at Six per cent, per annum from date until paid. Interest payable when paid. Value received.

"We, the makers and endorsers of this note, are liable as principals, and hereby waive demand, protest and notice of protest and all benefits of the statutes of limitations and exception and agree that this note may be extended at the option of the legal holder without notice to us, and to pay all costs and expenses of collecting this note with or without suit, including attorney fee.
Address:
Banner, Wyoming s/ Carl H. Cantonwine
 s/ Juanita M. Cantonwine"

er, on December 16, 1975, this action was commenced in Wyoming.

On appeal, we are confronted with the following issues:

1. Whether the action was barred by the applicable statute of limitations;
2. Whether there was an issue of material fact with respect to consideration for the notes; and
3. Whether the interest of the plaintiff's husband in the notes was effectively renounced.

### STATUTE OF LIMITATIONS

We are here concerned with two potentially applicable statutes of limitation. In Wyoming, a civil action on a contract or promise in writing must be brought within ten years after the cause of action accrues. Section 1–16, W.S.1957 [§ 1–3–105(a)(i), W.S.1977]. The Colorado statute of limitations for actions on contractual debts is six years. Section 13–80–110, C.R.S.1973. The defendants contend that the Colorado statute applies—thus barring the present action, which was brought just over nine years after the date of the promissory notes—by virtue of § 1–25, W.S.1957 [§ 1–3–117, W.S.1977]. This provision— Wyoming's "borrowing statute"—provides:

> "If by the laws of the state or county *where the cause of action arose* the action is barred, it is also barred in this state." [Emphasis supplied]

As indicated by the emphasized portion of § 1–25, supra, the threshold inquiry pertains to where the cause of action on these notes arose. If the cause of action arose in Wyoming, then § 1–25, supra, does not apply and the action was timely commenced under the Wyoming ten-year statute of limitation. Defendants contend, however, that the cause of action arises in the state—in this case, Colorado—where the notes are payable and where the defendants are subject to service of process, citing *Bliler v. Boswell,* 9 Wyo. 57, 59 P. 798, reh. den., 9 Wyo. 57, 61 P. 867. While *Bliler* contains some useful principles of law—which we will apply herein—the case is not dispositive of these appeals, given the distinction in factual circumstances. In *Bliler,* both the maker and payee of promissory notes—payable in Colorado on a future date—were residents of Colorado and continued to reside there until the maturity of the notes. While the notes were executed and dated in Wyoming, this court determined that the cause of action arose in Colorado, given the peculiar facts of the case. As stated in the opinion denying the petition for rehearing:

> " . . . Under those circumstances, and upon those facts, we held that the cause of action arose in Colorado, and it was not intended that our decision should go further than that. . . . " 61 P. at 867.

Another distinguishing circumstance exists, which was not emphasized in *Bliler.* In *Bliler,* the notes in question were time instruments, as opposed to the demand notes we have here. This distinction will become critical to our disposition of this issue.

■■■ Before addressing ourselves to the specific problems concerning actions on promissory notes, it is important to echo several general principles relative to the accrual of causes of action. As observed in *Bliler v. Boswell, supra,* at 59 P. 803:

> " . . . A 'cause of action' is defined as matter for which an action may be brought. It is said to accrue to any person when that person first comes to a right to bring an action. A cause of action implies that there is some person in existence who can bring suit, and also a person who can lawfully be sued. Again, when a wrong has been committed, or a breach of duty has occurred, the cause of action has accrued, although the claimant may be ignorant of it. A cause of action does not accrue until the existence of such a state of things as will enable a person having the proper relations to the property or persons concerned to bring an action. 1 Bouv. Law Dict. (Rawle's Revision) p. 295. The statute of limitations is never held to have commenced to run upon a note until it has become due, and the duty has devolved upon the party liable to make payment. . . . "

■ The concept was extensively discussed in *Bruner v. Martin,* 76 Kan. 862, 93 P. 165, 166, as follows:

" . . . The phrase 'cause of action' has often been defined. It cannot exist without the concurrence of a right, a duty, and a default; or, stated differently, an obligation must exist upon one party in favor of the other, the performance of which is refused. Bouvier defines it as a right to bring an action. To the same effect see *Bucklin v. Ford,* 5 Barb. (N.Y.) 393; *Myer v. Van Collem,* 28 Barb. (N.Y.) 230; *Lewis v. Hyams,* 26 Nev. 68, 63 P. 126, 64 P. 817, 99 Am.St.Rep. 677. 'Cause of action is the right to prosecute an action with effect.' *Douglas v. Forrest,* 4 Bing. 686. In *Veeder v. Baker,* 83 N.Y. 156, is defined as follows: 'It may be said to be composed of the right of the plaintiff and the obligation, duty, or wrong of the defendant; and these combined, it is sufficiently accurate to say, constitute the cause of action.' Pomeroy in his Code Remedies, § 453, uses the following language: 'Every judicial action must therefore involve the following elements: A primary right possessed by the plaintiff, and a corresponding primary duty devolving upon the defendant; a delict or wrong done by the defendant which consisted in a breach of such primary right and duty; a remedial right in favor of the plaintiff, and a remedial duty resting on the defendant springing from this delict, and finally the remedy or relief itself. Every action, however complicated, or however simple, must contain these essential elements. Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term, and as it is used in the Codes of the several states. They are the legal cause or foundation whence the right of action springs.' . . .

"It would be difficult to find a better or more apt statement of where and when a cause of action arises than is found in the following extract from the opinion in *Durham v. Spence,* L.R. 6 Exch. 46: 'Now the cause of action must have reference to some time as well as to some place. Does then the consideration of the time when the cause of action arises give us any assistance in determining the place where it arises? I think it does. The cause of action arises when that is not done which ought to have been done, or that is done which ought not to have been done. But *the time when the cause of action arises determines also the place where it arises; for when that occurs which is the cause of action, the place where it occurs is the place where the cause of action arises.'* . . . " [Emphasis supplied]

In *Bruner*—as was true in *Bliler v. Boswell* and most of the other cases we have discovered—the court was concerned with an instrument *which matured on a certain date subsequent to its execution.* Since under the cited definitions, a cause of action did not arise until the note became due and a duty devolved upon the maker to render payment, the place where the cause of action arose was found to be the place where the note was payable—regardless of where it had been executed. See, also, *Aviation Credit Corporation v. Batchelor,* Fla.App., 190 So.2d 8, cert. dismissed, 198 So.2d 24; and *Meekison v. Groschner,* 153 Ohio St. 301, 91 N.E.2d 680. See, generally, Annot., "Choice of Law as to Applicable Statute of Limitations in Contract Actions." 78 A.L. R.3d 639 (1977). Generally, in making a determination as to where a cause of action on a promissory note arises, the courts consider such factors as the place of execution and delivery and the place of payment. *Western Soils Company v. Skolness,* N.D. Iowa, 370 F.Supp. 831, 833. When, however, the promissory notes in question are demand instruments, further matters must be considered *within* the context of these general factors.

■ The cause of action on a demand note arises immediately upon its execution and delivery, which—in turn—determines where the cause of action accrues for purposes of applying statute-of-limitation provisions. *Govan v. Trade Bank & Trust Co.,* 109 N.J.Super. 271, 263 A.2d 146. In other

words, a cause of action accrues on the date of instrument—even though no demand has been made by the payee. Section 34–3–122, W.S.1957, 1975 Cum.Supp. [§ 34–21–322, W.S.1977]; *Degmetich v. Beranek,* 188 Neb. 659, 199 N.W.2d 8; *Troup v. Rozman,* 286 Minn. 88, 174 N.W.2d 694; *Schnug v. Schnug,* 203 Kan. 380, 454 P.2d 474; *Matter of Estate of Culver,* 26 Or.App. 809, 554 P.2d 541. See, generally, 2 Bender's Uniform Commercial Code Service, § 5.04[2] (1976); and Annot., 71 A.L.R.2d 284, 290. While the undisputed evidence in the present case indicates that the demand notes were antedated, the stated date (October 1, 1966) determines the time when it is payable. Section 34–3–114, W.S.1957, 1975 Cum.Supp. [§ 34–21–314, W.S.1977]. While the notes, in this case, state that they were dated at Salida, Colorado, the undisputed evidence indicates that they were executed in Wyoming. Since the *time* when a cause of action accrues is related directly to the *place* where the cause of action accrues, we hold that the cause of action herein arose in Wyoming. Because of this holding—which renders the plaintiff's commencement of this action timely—we find it unnecessary to address plaintiff's argument concerning the effect of the Colorado tolling statute, nor need we consider the effect of the waiver of the benefits of a statute of limitations contained in each promissory note.

## CONSIDERATION

■ Defendants contend that summary judgment was precluded by virtue of a genuine issue as to whether the promissory notes were supported by adequate consideration. In this regard, defendants assert that the checks, totaling $15,000.00, constituted completed gifts—as opposed to a loan—prior to execution of the promissory notes. We must view the evidence herein in a light most favorable to the defendants—since they opposed the motion which was granted in part. *Seay v. Vialpando,* Wyo., 567 P.2d 285, 287, and cases cited therein. As oft repeated, the moving party has the burden on appeal of showing the absence of a genuine issue of material fact.

*Seay v. Vialpando, supra.* In applying these general principles, we are reminded that where there is competent evidence, presenting a prima facie case, the party opposing a summary judgment motion must affirmatively set forth competent and material opposing facts. *Murray First Thrift & Loan Company v. N–C Paving,* Wyo., 576 P.2d 455; and *Hunter v. Farmers Insurance Group,* Wyo., 554 P.2d 1239.

■ The October 14 letter (fn. 1, supra) unequivocally indicates that plaintiff's husband had *loaned* the $15,000.00 to the defendants, and that Mr. Fehling was attempting to use the promissory notes as devices whereby the total amount *could in the future be annually gifted* to the defendants without a federal-gift-tax consequence to Mr. Fehling. If, as disclosed on the face of the letter, the $15,000.00 represented a loan, then the amount would constitute an obligation, owed by defendants to the plaintiff and her husband, which existed at the time the promissory notes were executed and which, therefore, supplied the requisite consideration for the notes. Section 34–3–408, W.S.1957, 1975 Cum.Supp., [§ 34–21–345, W.S.1977]. As a result, plaintiff established—albeit through evidence supplied by the defendants—a prima facie case, establishing unpaid promissory notes supported by consideration.

■ The only evidence presented by defendants, in opposition to the clear language of the October 14 letter, was the affidavit of Carl Cantonwine. The mentioned affidavit merely sets forth conclusions that the Fehlings "gave" him two checks, totaling $15,000.00, and that Cantonwine received the notes some seven months "after the last gift." It is clear that such statements are merely categorical assertions of ultimate facts—which, without supporting evidence, cannot be used to defeat a summary judgment. See, Rule 56(e), W.R.C.P.; and *Keller v. Anderson,* Wyo., 554 P.2d 1253, including cases cited therein.

Since the plaintiff presented a prima facie case for recovery—which was not op-

posed by competent evidence—we hold that the trial court was correct in concluding that there was no genuine issue of material fact which would preclude entry of a summary judgment.

## RENUNCIATION

The trial court found that the plaintiff and her husband each had an undivided one-half interest in the notes, as tenants in common, and that the plaintiff's husband had forgiven his one-half interest by Article Eight of his October 20, 1966, will. The plaintiff concedes, in her cross-appeal from the dismissal of part of her claim, that the notes were held by the Fehlings as tenants in common—and we need not, therefore, discuss that point in this opinion. We are left, then, with the plaintiff's contentions on appeal that, as a matter of law: (1) any interest in the notes could only be discharged by both of the Fehlings, as co-payees; or (2) if plaintiff's husband *could* discharge his one-half interest, he did not do so because he failed to deliver the will or surrender the notes to the defendants; or (3) the will did not effect a discharge of *these* notes.

 In asserting that *any* interest in the notes could only be discharged by the joint action of both payees, the plaintiff relies on § 34–3–116(b), W.S.1957, 1975 Cum.Supp. [§ 34–21–316(a)(ii), W.S.1977].[3] The application of this provision must be considered in conjunction with other relevant U.C.C. provisions—which, in this case, would be § 34–3–605, W.S.1957, 1975 Cum. Supp. [§ 34–21–372, W.S.1977]. *Gillespie v. Riley Management Corp.,* 59 Ill.2d 211, 319 N.E.2d 753. Section 34–3–605, supra, provides in relevant part:

"(1) *The holder* of an instrument may even without consideration discharge any party

\* \* \* \* \* \*

"(b) by renouncing *his rights* by a writing signed and delivered or by surrender of the instrument to the party to be discharged." [Emphasis supplied]

On its face, § 34–3–605(1)(b), supra, allows a holder to at least discharge a party to the instrument *to the extent of the holder's interest therein.* He could not, however, discharge *all* interests under an instrument payable to himself and another party. Section 34–3–116(b), supra. This construction is consistent with general legal principles applicable to tenancies in common. 20 Am. Jur.2d, Cotenancy and Joint Ownership, § 26. Cf. *Hill v. Breeden,* 53 Wyo. 125, 79 P.2d 482; and *Wambeke v. Hopkin,* Wyo., 372 P.2d 470. We see no basis on which to conclude that these particular principles were changed by enactment of the Uniform Commercial Code and, therefore, hold that the plaintiff's husband could renounce his undivided one-half interest in the promissory notes.

 Finally, we must determine whether plaintiff's husband made an *effective* renunciation of his interest in the notes. In this regard, plaintiff contends that her husband failed to comply with the renunciation requirements of § 34–3–605(1)(b), supra, because he *failed to deliver* his Last Will and Testament *to the defendants.* The plaintiff cites no case authority for her contention, and we have been unable to discover any which provides a definitive answer to the issue raised. It is beyond question, however, that a testator may discharge debts due to him by express provisions in his will. 6 Bowe-Parker: Page on Wills, § 57.1 (1962); 96 C.J.S. Wills § 792; 80 Am.Jur.2d, Wills, § 1593. In addition, a tenant in common may dispose of his undivided interest in property by devise or bequest. 20 Am.Jur.2d, Cotenancy and Joint Ownership, § 99. We find no language in § 34–3–605(1)(b), supra, which would prohibit the ability of a person to

---

**3.** Section 34–3–116, W.S.1957, 1975 Cum.Supp. [§ 34–21–316, W.S.1977], provides:

"An instrument payable to the order of two or more persons

"(a) if in the alternative is payable to any one of them and may be negotiated, dis-

charged or enforced by any of them who has possession of it;

"(b) if not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them."

discharge his interest in an instrument by a renunciation contained in a will which meets the requisite formalities of execution. See, *Ricks v. Brown,* 15 Or.App. 160, 515 P.2d 206; and *Greene v. Cotton,* Ky., 457 S.W.2d 493. The term "deliver"—as contained in § 34–3–605(1)(b), supra,—is defined by the U.C.C. as a "voluntary transfer of possession." Section 1–201(14), W.S. 1957, 1975 Cum.Supp. [§ 34–21–120(a)(xiv), W.S.1977]. There is no indication that this "delivery" must occur contemporaneously with the written renunciation, or that it must occur during the payee's lifetime—as would be true for an effective gift inter vivos or gift causa mortis (*Begovich v. Kruljac,* 38 Wyo. 365, 267 P. 426). We hold that all the requirements of an effective renunciation were met when Mr. Fehling's will was admitted to probate.[4] Furthermore, we hold that the language of Article Eight of Mr. Fehling's will was effective in discharging his interest *in these particular notes.* The intent of the testator in this case is clearly discernible from the will itself, and the plaintiff has supplied no cogent reasoning or authority to the contrary.

Affirmed.

---

4. It is noted that the means of renunciation contained in § 34–3–605(1)(b), W.S.1957, 1975 Cum.Supp. [§ 34–21–372(a)(ii), W.S.1977]—a delivered writing or a surrender of the instruments in question—are expressed in the alternative and not in the conjunctive. As a result, we can see no reason to discuss any questions related to the surrender of the notes.