S.J. STANBURY, Appellant (Plaintiff),

v.

Raymond B. LARSEN, Appellee
(Defendant).

Raymond B. LARSEN,
Appellant (Defendant),

v.

S.J. STANBURY, Appellee (Plaintiff).

Nos. 90–48, 90–49.

Supreme Court of Wyoming.

Dec. 10, 1990.

Robert O. Anderson of Andrews & Anderson, P.C., Riverton, for appellant S.J. Stanbury in case No. 90–48 and appellee in case No. 90–49.

A. Joe Hageman and Cherie Shelton Norman of Skiles, Hageman & Butler, Laramie, for appellee in case No. 90–48 and appellant in case No. 90–49.

Before URBIGKIT, C.J., and
THOMAS, CARDINE, MACY and
GOLDEN, JJ.

URBIGKIT, Chief Justice.

Samuel J. Stanbury sued Raymond B. Larsen on two unpaid promissory notes. The district court ruled for Larsen on one note and entered judgment in Stanbury's favor on the other. Stanbury appealed the district court's dismissal of his suit on the first note by assertion of district court error in not tolling the Wyoming statute of limitations. Larsen filed a cross-appeal, and asserts the district court erred in finding that the cause of action on the second note arose in Wyoming, precluding application of a shorter California statute of limitations, with an additional error in the award of attorney fees.

We affirm.

## FACTS

For a number of years, these two litigants had been friends and business associates in Riverton, Wyoming. Stanbury, at one point, even became an investor and stockholder in one of Larsen's business ventures, Acme Solar Works, Inc. Stanbury also permitted Larsen to open an accounts payable at his business, Riverton Tire and Oil. In 1977, Larsen left Riverton and moved to California. In February of 1978, Larsen signed the first note (a 180-day time instrument dated February 1, 1978 and due August 1, 1978) for $6,000. In 1981, Larsen executed the second note in California (a demand instrument) for $5,500. After signing the second note, he returned (delivered) it by mail to Stanbury in Wyoming. In 1985, Stanbury sent a letter to his ex-friend in California "sug-

gesting" that Larsen begin making payments on the second note. Neither note was paid and this lawsuit was filed on December 27, 1988.

Larsen, in a motion to dismiss, claimed the Wyoming statute of limitations barred Stanbury's lawsuit on the first note and that the California statute of limitations barred suit on the second instrument. He argued the cause of action on the first note accrued August 1, 1978 (when the note was due). Under Wyoming's ten-year statute of limitations, it was asserted that Stanbury had only until August 1, 1988 to file suit.[1] Thus, the lawsuit filed on December 27, 1988 was time barred on that note. As to the second note, Larsen argued the cause of action arose in California where the note was executed and, therefore, California's statute of limitations governed. (California has an applicable four year statute of limitations.) Larsen contended, since the instrument was a demand note, that the cause of action accrued upon California execution in 1981 and the payee only had until 1985 to file suit. Accordingly, the December 1988 lawsuit on the second promissory note was barred as well. This claim was based on Wyoming's "borrowing" statute which states that "[i]f by the laws of the state * * * where the cause of action arose the action is barred, it is also barred in this state."[2] W.S. 1–3–117.

The district court dismissed the complaint on the first note, but allowed Stanbury to proceed with his suit on the other instrument. As to the first note, the district court found Stanbury knew Larsen's residential address in California and knew where to find him throughout the ten-year statute of limitations, and ruled that under Wyoming law "the statute of limitations is

---

1. The Wyoming statute of limitations provides in relevant part:

 (a) Civil actions * * * can only be brought within the following periods after the cause of action accrues:

 (i) Within ten (10) years, an action upon a specialty or any contract, agreement or promise in writing[.]

 W.S. 1–3–105.

2. The promissory note, which is an interesting document, is attached as Appendix A to this

opinion. In cognizance of the twenty percent per annum provision of the note, a curious feature of this litigation is that Larsen, with his California forum statute of limitations argument, did not present the companion issue of California usury statutes which comparably do not exist in Wyoming. *See* Cal.Civil Code § 1916–1 (West 1985 & Cum.Supp.1990) and ·Cal.Const. art. XV, § 1 (West 1954 & Cum.Supp. 1990).

not tolled if the one who seeks collection of the note has knowledge of the whereabouts and residence of the payor."[3] The district court ruled the cause of action on the second note arose in Wyoming rather than California, and under Wyoming's ten-year statute of limitations, the collection lawsuit was not barred. Subsequently, after a one-day bench trial, the district court entered judgment in favor of Stanbury on the second note and, in addition, pursuant to the note terms, $5,265 in attorney fees.

Stanbury challenges the district court's ruling that the first note was barred under the Wyoming statute of limitations and Larsen contests the monetary judgment by denial that the cause of action on the second note arose in Wyoming or that the attorney fees were properly proven.

## STANDARDS OF REVIEW AND APPLICATION

[T]he applicable standard of review depends upon whether the determination called into question in the appellate courts falls within one of three categories: [1] "review of the sufficiency of the evidence to meet the required burden of persuasion at the trial [fact-finding] level; [2] review of the exercise of discretion; and [3] plenary review of the choice, interpretation, [construction], and application of the controlling legal precepts."

*ANR Production Co. v. Wyoming Oil and Gas Conservation Com'n,* 800 P.2d 492, 495 (Wyo.1990) (quoting Byer, *Judge Aldisert's Contribution to Appellate Methodology: Emphasizing and Defining Standards of Review,* 48 U.Pitt.L.Rev. xvi, xx (preceding p. 963) (1987)).

**3.** The tolling statute supplements the statute of limitations:

If a cause of action accrues against a person when he is out of the state, or has absconded or concealed himself, the period limited for commencement of the action does not begin to run until he comes into the state or while he is so absconded or concealed. If after the cause of action accrues he departs from the state or absconds or conceals himself, the time of his absence or concealment is not

*The First Note*

Stanbury claims the district court erred both as to the law and the facts in dismissing his claim on the first note. The district court erred as a matter of law, he contends, when it ruled that Stanbury's "knowledge" of the non-resident defendant's whereabouts prevented the statute of limitations from being tolled. The interpretation and construction of our case law on tolling the statutes of limitation engages our plenary review of controlling legal precepts.

In *Tarter v. Insco,* 550 P.2d 905, 908–09 (Wyo.1976) (emphasis in original), this court stated the tolling statute applies when the defendant has "departed from the state *in such manner so that he is beyond the reaches of the law for purposes of service."* In a later case, we indicated that, if the plaintiff has knowledge of the nonresident defendant's location and that defendant is subject to this state's jurisdiction through the long arm statute, the statute of limitations is not tolled. *Greenwood v. Wierdsma,* 741 P.2d 1079 (Wyo.1987).

■ Given this line of cases, the district court could reasonably find the statute of limitations is not tolled when the plaintiff has "knowledge" of the defendant's whereabouts. Thus, the district court was correct in its construction of controlling legal precepts when it ruled the statute of limitations was not tolled and the collection action on the first note was barred.

■ Stanbury also asserts he had no "knowledge" of Larsen's whereabouts and, therefore, the district court erred factually when it ruled to the contrary. This issue engages our review of the sufficiency of the evidence.[4]

computed as part of the period within which the action shall be brought.
W.S. 1–3–116.

**4.** A parallel issue is also discernable which was not considered, although perhaps assumed in context, and not briefed by the litigants for our decision. That inquiry addresses whether the tolling statute, W.S. 1–3–116, equally involves long arm jurisdictional litigation where the defendant was not a resident in the forum state when the cause of action accrued compared to

There was sufficient evidence to support the district court's finding that Stanbury knew Larsen's location in California; that he visited Larsen in California; that he knew the location of Larsen's residence; that he knew Larsen's mailing address; and that Larsen was not avoiding service during this period. Notwithstanding his knowledge, Stanbury made no attempt to ascertain whether Larsen was susceptible to service under Wyoming's long arm statute within the ten-year statute of limitations.[5] In fact, he testified it was not until 1988 that he decided to make a "serious effort" of locating Larsen. Stanbury fails on this sufficiency of the evidence challenge to the district court's decision.

### The Second Note

■ Larsen then claims that litigable action and resulting judgment on the 1981 demand note was barred by the California statute of limitations. He bases this claim on our decision in *Cantonwine v. Fehling*, 582 P.2d 592 (Wyo.1978). This issue also engages our plenary review of controlling legal precept.

*Cantonwine* was a Wyoming suit against the makers of several promissory notes. The payee-plaintiff of the notes was a resident of Colorado and the makers-defendants were residents of Wyoming. The notes, drafted as demand instruments payable in Colorado, were executed by the defendants in Wyoming. One of the issues was whether the Wyoming or the Colorado statute of limitations applied. If the Colorado statute applied, the suit would be barred. (Colorado had a six-year statute of limitations.) On the other hand, if the Wyoming statute applied, the suit would be within the ten-year limitation period. The defendants argued that under Wyoming's borrowing statute, the Colorado statute of limitations applied because the cause of action arose in Colorado; where the notes were payable and where the defendants were subject to service of process.

In *Cantonwine*, 582 P.2d at 596, this court began by noting that it was "critical" to maintain the distinction between a time instrument and a demand instrument when deciding where the cause of action on a promissory note arises. This distinction was based on a reading of W.S. 34.1–3–122, which states in part:

(a) A cause of action against a maker or an acceptor accrues:

(i) In the case of a time instrument on the day after maturity;

(ii) In the case of a demand instrument upon its date or, if no date is stated, on the date of issue.

Given this language, we reasoned that "[g]enerally, in making a determination as to where a cause of action on a promissory note arises, the courts consider such factors as the place of execution and delivery and the place of payment." *Cantonwine*, 582 P.2d at 597.

The decision would have generally applied these factors to a cause of action when the promissory notes are time instruments, but "[w]hen, however, the promissory notes in question are demand instruments, further matters must be considered *within* the context of these general factors." *Id.* at 597 (emphasis in original). Under W.S. 34.1–3–122, this court reasoned "[t]he cause of action on a demand note arises immediately upon its execution and delivery, which—in turn—determines where the cause of action accrues for purposes of applying statute-of-limitation provisions." *Cantonwine*, 582 P.2d at 597. In that case, where the notes were executed in Wyoming, the decision applied the

the case where a resident defendant leaves the jurisdiction subsequent to accrual of the claimed obligation. Following the basis of decision of the district court and our resolution of the case, no consideration of the parallel inquiry will be given and no intimation of result is provided for future litigation.

**5.** Wyoming's long arm statute, W.S. 5–1–107, provides that:

(a) A Wyoming court may exercise jurisdiction on any basis not inconsistent with the Wyoming or United States constitution.

(b) When the exercise of personal jurisdiction is authorized by this section, service may be made outside this state and proved according to the Wyoming Rules of Civil Procedure or any order of the court.

longer Wyoming statute of limitations as the law of the forum to permit the collection litigation.

Thus Larsen, relying on *Cantonwine*, argues that because the parties' demand note was executed in California, the cause of action on the note arose in California, and under Wyoming's borrowing statute, the district court should have applied the California statute of limitations rather than Wyoming's.

 In retrospect, it is discerned that W.S. 34.1–3–122 was applied too broadly in *Cantonwine*. After taking a second look at the statute, we believe it has a narrower purpose: it triggers the statute of limitations on demand notes. The statute does nothing more. It does not direct the court's determination as to where the cause of action arose. Under the statute, the cause of action accrues upon the execution (and delivery) of the demand note. In other words, the statute of limitations may begin to run when the demand note is executed, but the commercial code statute does not require the court to apply the statute of limitations of the state where the note may have been executed as a unitary test. Thus, the statute does not foreclose a Wyoming court from applying its own statute of limitations to a demand note executed in another state. Simply put, where the demand note was executed is just one of the factors the court weighs in analyzing where the cause of action arose. This approach is preferable to one that ties the cause of action to one, perhaps fortuitous, event—where the note was executed. Similarly to the Wyoming sale found in *Cherry Creek Dodge, Inc. v. Carter*, 733 P.2d 1024 (Wyo.1987), this transaction was a Wyoming loan. *See also Whitman v. Green*, 289 F.2d 566 (9th Cir.1961), where the place of the execution did not control over the essential elements of the transaction.

We conclude that the cause of action accrued for the "on demand" note upon execution and delivery, *Cantonwine*, 582 P.2d at 597; *Golden Rule Oil Co. v. Liebst*, 153 Kan. 123, 109 P.2d 95 (1941); W.S. §§ 34.1–3–109 and 34.1–3–122; and the default occurred in Wyoming where the pay-

ment was to have been made in accord with its terms, "Payable at Riverton, Wyo. on demand by maker S.J. Stanbury." See discussion of demand notes which would authenticate creation of the defined obligation upon receipt in Riverton of the note, 11 Am.Jur.2d *Bills and Notes* § 286 (1963). The test is where performance is to be made, *Bank of Boston Intern. of Miami v. Arguello Tefel*, 626 F.Supp. 314 (E.D.N.Y. 1986); *Aviation Credit Corp. v. Batchelor*, 190 So.2d 8 (1966), *cert. denied* 198 So.2d 24 (Fla.1967); *Davidson v. Browning*, 73 W.Va. 276, 80 S.E. 363 (1913), and delivery is significant. *See* Annotation, *When Statute of Limitations Begins to Run Against Note Payable on Demand*, 71 A.L.R.2d 284, 290 n. 5 (1960). *Cantonwine*, 582 P.2d at 597 (emphasis added) states "[t]he cause of action on a demand note arises immediately upon its execution *and* delivery * * *." In this case, delivery occurred by mailing to the payee in Riverton, thus creating a documented obligation when the note was received in Wyoming which then could trigger existence of the written instrument cause of action.

There is a further basis to affirm the district court decision in application of the Wyoming statute of limitations. After first discerning *in this case* the existent cause of action on the note only accrued upon delivery of the note in Wyoming and not upon prior execution in California, the additional distinguishable line of authority recognizes that even after delivery in some cases the debt may not accrue until demand is made. Contrary to the normal rule of non-requirement of demand for demand notes, 11 Am.Jur.2d, *supra*, at 311, the superseding intent of the parties may appear from the instrument or other facts properly proved at trial to require demand.

On its face, this note is not a typical demand note. The instrument contains a twenty percent interest provision, references installment payments, lacks a due date, and then provides in the last line, "Payable * * * on demand by maker S.J. Stanbury." Cases reflecting this constructional case law examine the terms of the instrument and the nature of the transaction to deter-

mine, within particularized circumstances, whether a demand was required to create default. Consequently, the demand incident for effectuating the litigable status occurs not on note execution in California, but demand for payment made in Wyoming where the note was payable. The requirement for demand which attenuates the usual demand note rule first arose in discussions of notes providing "on demand after date" with additional provisions reflecting an anticipated post execution event for required payment. *Shapleigh Hardware Co. v. Spiro*, 141 Miss. 38, 106 So. 209 (1925). The intent of the parties was established from the entire instrument to be considered in creating a demand requirement. See, however, *S.S. Finger Mercantile Co. v. Adair*, 159 Miss. 303, 131 So. 875 (1931), where the "on demand after date" alone was not sufficient to require affirmative demand action to mature litigable cause of action. The circumstance rule was applied to reject classical demand note status in *C & T Discount Corp. v. Sawyer*, 123 Vt. 238, 185 A.2d 462, 465 (1962), where that court stated:

> The note was not a demand note on its face. Both the wording of the note and the circumstances under which it was given made abundantly clear that it was optional with the payee when demand might be made for payment of the note. That option was not exercised by the payee against the defendant until the bringing of this action in June, 1959. This was the first demand made by the plaintiff for payment of this note by the defendant, and the statute of limitations did not commence to run in favor of the defendant until such demand was made.

The circumstance rule was applied by the Rhode Island court in *Dibattista v. Butera*, 104 R.I. 465, 244 A.2d 857 (1968), to require actual demand to be made. A similarity of circumstances exists between that case and the factual circumstance here where at the date of note execution, the parties clearly recognized that the maker had no funds to repay and would expect to commence payment at some indefinite future time "upon demand."[6] The structure of the note anticipating "demand" was dispositive in *First Nat. Bank v. Bell*, 140 Okl. 24, 282 P. 147 (1929) and *Schoonover v. Caudill*, 65 N.M. 335, 337 P.2d 402 (1959). *See also Eggers v. Eggers*, 79 S.D. 233, 110 N.W.2d 339, 342 (1961).

We discern that the district court would also have been justified in holding for this case that a demand was required as was ultimately made. Requirement of payment demand for the note payable in Wyoming as submitted from Wyoming makes application of the Wyoming statute of limitations appropriate and particularly so when suit is filed in Wyoming. *Shewbrooks v. A.C. and S., Inc.*, 529 So.2d 557 (Miss. 1988).

After weighing the factors discussed in *Cantonwine* (place of execution and delivery, place of payment, etc.), the district court ruled that the cause of action on the promissory note arose in Wyoming and, therefore, the borrowing statute had no application. We agree. Stanbury, a Wyoming resident and businessman, as evidenced by the 1981 replacement obligation instrument, loaned Larsen money for his business, Acme Solar Works, Inc., started in 1977 while Larsen was a Wyoming resident and businessman living in Riverton. Stanbury and Larsen had an "ongoing business relationship" in Acme Solar Works, Inc.[7] (Stanbury held stock and was an initial investor in Acme Solar Works, Inc.) Thus, the 1981 promissory instrument—delivered and payable in Wyoming—was part of Stanbury and Larsen's ongoing business relationship, vis-a-vis Acme Solar Works,

---

**6.** Larsen never made any payments on the note from date of execution of July 30, 1981 until the lawsuit was instituted.

**7.** Acme Solar Works Partnership was the predecessor of Acme Solar Works, Inc. formed in 1977 by Larsen. All of the individuals, including Stanbury, who were partners were made shareholders in the corporation. These individuals were all from Riverton and were involved in "business dealings" with Acme Solar Works, Inc.

Inc.[8] That business relationship had its roots in Wyoming when the cause of action on the 1981 demand note arose.[9] The place of performance for this note is where payment was to be made. *Cherry Creek Dodge, Inc.*, 733 P.2d 1024, *Aviation Credit Corp.*, 190 So.2d 8. The borrowing statute does not apply to a cause of action which arose in Wyoming. *Hamilton v. General Motors Corp.*, 490 F.2d 223 (7th Cir.1973); Restatement (Second) Conflicts of Law § 188 (1971).

Thus, we hold that, even when the note was executed in California in 1981 and then delivered by mailing to Wyoming, enforcement was controlled by the Wyoming statute of limitations, and Stanbury then had at least ten years to file suit from date of receipt which completed delivery. Stanbury's suit filed in December 1988 was within the limitation period. Accordingly, the district court's ruling on the second note is affirmed.

### Award of Stanbury's Attorney Fees on the Second Note

■ The district court ruled Stanbury, having prevailed on the second note (1981 demand note), was entitled to an award of $5,265 in attorney fees.[10]

Larsen claims the district court's award of attorney fees was neither reasonable nor adequately proved by citation of this court's decision in *UNC Teton Exploration Drilling, Inc. v. Peyton*, 774 P.2d 584 (Wyo.1989). This is a sufficiency of the evidence issue since otherwise with note recovery, plaintiff is entitled to the reasonable attorney fees provided by agreement.

In *UNC Teton Exploration Drilling, Inc.*, this court ruled that before attorney's fees may be awarded, a party must prevail and the fee awarded should be determined by the district court to be "reasonable." We then enumerated the requirements required to support an award of attorney's fees:

The claiming litigant should first present the court with an itemized billing reflecting time and rate. Thereafter, the determination of reasonableness is within the exercised discretion of the trial court. Evidence by the claimant including an analysis by his expert witness in affidavit or testimony becomes a basic requirement since the burden of proof rests with the claimant. *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869 (2d Cir.1987).

* * * With the reasonableness of the award to be judged by the abuse of discretion standard of review, these additional factors which may be considered by the trial court include: (1) the novelty and difficulty of the questions; (2) the skill requisite to perform the legal service properly; (3) the preclusion of other employment by the attorney due to acceptance of the case; (4) the customary fee; (5) whether the fee is fixed or contingent; (6) time limitations imposed by the client or the circumstances; (7) the amount involved and the results obtained; (8) the experience, reputation, and ability of the attorney; (9) the "undesirability" of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases.

*Id.* at 595.

Stanbury's attorney presented affidavits to the district court detailing the amount of

---

**8.** We believe the following colloquy between Larsen and Stanbury's attorney reflect Larsen's substantial Wyoming connections:

Q. Mr. Larsen, you have been a businessman of some substantial success since the early to mid–1960's in the Riverton, Wyoming area, haven't you?
A. Yes.
Q. And have you been an officer and director and chief executive officer of corporations employing many dozens of people during that time, haven't you?
A. Yes.

**9.** One of Stanbury's exhibits at trial was a 1988 "Wyoming Investment Fund Committee Loan Proposal and Analysis" prepared and signed by Larsen. In his loan application, for a business he operates in Laramie, Larsen lists his residence as Laramie. It is therefore unclear to this court whether Larsen is a California or Wyoming resident.

**10.** The demand note provided: "In the event of default in payment of this note and if same is collected by an attorney at law, the undersigned agrees to pay all costs of collection, including reasonable attorney's fees."

services expended on the case. He also presented the expert testimony of an attorney who reviewed his records (and reduced some of the hours charged). The expert testified as to the reasonableness of the amount charged and was cross-examined by Larsen's attorney. Larsen also had the opportunity to oppose the amount awarded, but provided no countervailing evidence by documents or witnesses. The district court arrived at the amount of the award after a review and application of the factors detailed in *UNC Teton Exploration Drilling, Inc.*, 774 P.2d 584 to the evidence of services expended on collection of the note.

We affirm the district court on all issues of appeal.

APPENDIX A

PLAINTIFF'S
EXHIBIT
/

PROMISSORY NOTE

~~$5500.00~~
AMOUNT OF NOTE

Jan. 1, 1981
DATE OF NOTE

FOR VALUE RECEIVED, I, we, or either of us, jointly and severally promise to pay to the order of S. J. Stanbury
of Riverton, Wyo.

the principal sum of Fifty Five Hundred Dollars ($5500.00) with interest upon the principal balance from time to time remaining at the rate of 20 % per annum from date hereof.

If default be made in the payment of any installment of principal or interest under this note, the holder of this note may exercise the option of treating the remainder of the debt as due and collectible. Failure to excercise this option shall not constitute a waiver of the right to exercise same at any other time.

In the event of default in payment of this note and if same is collected by an attorney at law, the undersigned agrees to pay all costs of collection, including a reasonable attorney's fee.

The undersigned, and each of us, whether principal, surety, guarantor, endorser or other party hereto, agree to be jointly and severally bound, and I, or we, severally hereby waive any homestead or exemption right against said debt and waive demand, protest and notice of demand, protest and non-payment.

Payable at _____ Riverton, Wyo. on demand by maker S. J. Stanbury

This note replaces a note in the amount of $5800.00 signed by the borrower in May of 1981 but never received by the maker.

Raymond Larsen 30 July 81

90-48