**J. B. SERVICE COURT, a partnership, and Mansel C. Johnston, Appellants (Defendants),**

v.

**Michael WHARTON, Appellee (Plaintiff).**

**No. 5475.**

Supreme Court of Wyoming.

Aug. 14, 1981.

Robert E. Holstedt, Sheridan, signed the brief and appeared in oral argument on behalf of appellants (defendants).

Hardy H. Tate, Sheridan, signed the brief and appeared in oral argument on behalf of appellee (plaintiff).

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROONEY, Justice.

Appellants-defendants appeal from a judgment in the amount of $28,424.69 awarded to appellee-plaintiff as damages for breach of a contract. The contract provided that appellant would build a mobile home court on some land owned by him and then sell the same to appellee. However, the sale was conditioned on appellee obtaining a permit for the mobile home court from the state of Montana. Appellee was appointed agent for appellants for such purpose. The contract provided that it would terminate in six months if the permit was not obtained by then. It was not. However, appellee contended that he was prevented from obtaining the permit by virtue of a letter from appellants which appellee contended reflected an intention on appellants' part to terminate the contract.

■ The issue on appeal is whether or not the letter did terminate the agreement and thus amount to a breach of contract as held by the trial court.

Since we find that it did not, we reverse.

The contract was dated September 17, 1979, and the letter in question, written by appellants' attorney, was dated October 15, 1979. The letter reads:

"Since the execution of the Agreement to make you as the agent to prepare and process applications for obtaining a mobile home permit, we have been advised that the coal company is buying all of the surrounding land in that area and that for this reason, there would be no value in making an application for a mobile home permit, as the mobile home would be within the blasting area where homes would be severely affected by blasting.

"On that basis, I am writing to you on behalf of Mr. Johnston to advise you that we should cancel the agency and Memorandum of Agreement so that it will not be necessary to expend any monies in attempting to obtain a permit which would not be granted.

"Please let me hear from you immediately regarding this matter so that we can cancel the agreement."

The letter speaks of termination or cancellation of the contract *in the future*. It reflects that appellants think, it "should" be canceled, but it recognizes the necessity for assent of both parties to do so. The language is plain. There is nothing uncertain, ambiguous or equivocal about it. Appellants did not advise that they would refuse to perform under the contract—certainly not in an unequivocal or positive fashion. The appellants did not actually breach the contract by failing to perform an obligation set forth in it for them to perform. The alleged breach would have to be in the nature of repudiation of the contract or an anticipatory breach by appellants.

"* * * An anticipatory breach of contract is one committed before the time has come when there is a present duty of performance, and is the outcome of words or acts evincing an intention to refuse performance in the future. * * *

"In ascertaining whether an anticipatory breach of a contract has been committed by a party, it is the intention manifested by his acts and words which controls, and *not his secret intention*. Moreover, in order to predicate a cause of action upon an anticipatory breach, the words or conduct evidencing the breach must be *unequivocal and positive in nature*. An anticipatory breach of contract is not established by a negative attitude or one which indicates more negotiations are sought or that the party may finally perform." (Emphasis added.) 17 Am.Jur.2d Contracts § 448 (1964).

"In order to justify the adverse party in treating the renunciation as a total breach, the refusal to perform must be of the whole contract or of a promise or obligation going to the whole consideration, and *it must be distinct, unequivocal, and absolute*. * * *" (Emphasis added.) 17 Am.Jur.2d Contracts § 450 (1964).

In referring to a letter somewhat similar to the letter sent by appellants to appellee, the court said in *J.L. Metz Furniture Co. v. Thane Lumber Co.*, 298 F. 91, 92 (8th Cir. 1924):

"It does not contain a denial of Johnson's authority, or anything in the nature of a positive or unequivocal repudiation. It was simply a request for a cancellation. * * *"

Professor Corbin words the proposition:

"* * * A mere request for a change in the terms or a request for cancellation of the contract is not in itself enough to constitute a repudiation." (Footnote omitted.) Corbin on Contracts, § 973, pp. 905–906 (1951).

See *Goldwyn Distributing Corporation v. Brenneman*, 13 F.2d 105 (3rd Cir. 1926).

The determination in this respect is one of law, i. e. the interpretation, construction, or legal effect of language in the letter, which language is plain and unequivocal. *Hollabaugh v. Kolbet*, Wyo., 604 P.2d 1359 (1980); *Shepard v. Top Hat Land & Cattle Co.*, Wyo., 560 P.2d 730 (1977); *Goodman v. Kelly*, Wyo., 390 P.2d 244 (1964); *Jim's Water Service, Inc. v. Alinen*, Wyo., 608 P.2d 667 (1980); Calamari & Perillo, Law of Contracts (2d Ed.), § 3–12, p. 124 (1977).

■ Since the letter is plain and unambiguous and does not renounce or terminate the contract in an unequivocal or positive manner, it cannot amount to a breach of contract, and we cannot look beyond its four corners for the purpose of ascertaining an intent.

Considerable testimony was received at the trial and considerable argument was presented in the briefs of the parties concerning the truth or falsity of the statement in the letter relative to the coal company's purchase of surrounding land and appellants' secret intentions behind the letter; relative to subsequent correspondence between the parties;[1] and relative to the

---

1. On November 6, 1979, appellee's attorney responded to the letter, indicating that appellee was "going to proceed * * * to obtain" the permit, but that he "might be amenable to a cancellation of the agreement" if compensated therefor. On January 7, 1980, appellants' attorney confirmed a December 13, 1979 telephone conversation with appellee's attorney in which he advised that appellants "intended to honor" the contract. On February 7, 1980, appellants' attorney inquired of appellee's attorney concerning the ability of appellee to

letter having hindered or delayed appellee in his efforts to obtain the necessary permit.[2] It is unnecessary for us to consider these things in an effort to interpret the letter inasmuch as it is plain and unambiguous. We need not go beyond the language itself to determine that there was no positive, unequivocal or distinct renunciation of the agreement.

Appellants also presented an issue on appeal relative to the propriety of the awarded damages. Our disposition makes it unnecessary to consider this issue.

The judgment is reversed and appellee's complaint together with its cause is dismissed.

make the agreed payments under the contract and stated that it was his understanding that appellee "is progressing" toward obtaining the necessary permit. On March 25, 1980, appellants' attorney advised appellee's attorney that the contract had terminated on March 17 by virtue of appellee's failure to obtain the permit within the six-month period.

2. There was no evidence of any hindrance or interference by appellants with the performance of the contract other than that based on the October 15, 1979 letter.