**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 17 1998**

**PATRICK FISHER**
**Clerk**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

_____

VOLLAND D. HALLEY; GENE EUCKER,

    Plaintiffs-Appellants,

v.

MUTUAL OF OMAHA INSURANCE
COMPANY; UNITED OF OMAHA LIFE
INSURANCE COMPANY; OMAHA PROPERTY
AND CASUALTY COMPANY; MUTUAL OF
OMAHA FUND MANAGEMENT COMPANY,

    Defendants-Appellees.

No. 97-8019
(D. Wyo.)
(D.Ct. No. 95-CV-202-B)


JOHN FERRI; TERRY PAUL HALLEY; JOHN
MYRICK,

    Plaintiffs-Appellants,

v.

MUTUAL OF OMAHA INSURANCE
COMPANY; UNITED OF OMAHA LIFE
INSURANCE COMPANY; OMAHA PROPERTY
AND CASUALTY COMPANY; MUTUAL OF
OMAHA FUND MANAGEMENT COMPANY,

    Defendants-Appellees.

No. 97-8020
(D. Wyo.)
(D.Ct. No. 95-CV-204-B)

_____

## ORDER AND JUDGMENT[*]

_____

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel.  The court generally disfavors the

Before **BRORBY, KELLY,** and **HENRY**, Circuit Judges.

_____

Volland D. Halley and Eugene Eucker, formerly general agents for Mutual of Omaha Insurance Company, sued the Company for breach of contract in the United States District Court for the District of Wyoming. John Ferri, Terry Paul Halley, and John Myrick, formerly district sales managers for the general agents, sued the Company as third-party beneficiaries to the contracts of Messrs. Halley and Eucker. The derivative claims of the former district sales managers were consolidated with the contract claims of the former general agents. The district court determined the Company was entitled to summary judgment as a matter of law because the former agent's breach of contract claims were time-barred. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the decision of the district court.

Mutual of Omaha Insurance Company sells financial products, including insurance. The Company marketed these products through independently owned and operated general agencies, and through Company-owned and operated division offices. Mr. Volland Halley owned a general agency located in

citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Cheyenne, Wyoming, where Mr. Terry Halley served as a district sales manager. Mr. Eucker owned a general agency located in Spokane, Washington, where Messrs. Myrick and Ferri served as district sales managers.

The Company's relationship to each of the general agents was governed by a written contract. The general agents, in turn, contracted with the district sales managers. The Company's contracts with the general agents provided for termination by either party at any time, with or without cause.

Starting in 1988, the Company implemented a series of changes which allegedly breached the contracts of the general agents. The general agents allege, *inter alia* , that the Company imposed minimum production standards, essentially sales quotas, on the general agents and required termination of sales agents who failed to meet the quotas; charged general agents higher rates than those charged to division offices for the same products; and withdrew products from sale by general agents.

Ultimately, faced with the prospect of termination for failure to comply with the new Company requirements, Messrs. Halley and Eucker resigned in 1990. They subsequently brought suit, contending the changes implemented by

the Company breached their contracts.

When the general agents resigned, their respective district sales managers were effectively terminated.  Consequently, the district sales managers brought a second action against the Company, claiming to be third party beneficiaries to the contracts between their respective general agents and the Company.

Because relevant acts in this case occurred in Nebraska, where the Company's home offices are located, and in Wyoming and Washington, where the general agencies were owned and operated, the district court applied the law of the forum state, Wyoming's "borrowing" statute, to ascertain the applicable statute of limitations.  As a result of its inquiry, the district court concluded the Nebraska five-year statute of limitations for breach of written contract actions applied to the claims raised by the general agents.  The district court further determined these breach of contract claims were time-barred.  Accordingly, the district court granted the Company's motions for summary judgment on all claims in both suits.

The former general agents and sales managers, collectively the Plaintiffs, now appeal the grant of summary judgment, claiming the district court erred in

determining when and where their cause of action arose. We review the grant of summary judgment *de novo*, applying the same well-recognized legal standard used by the district court pursuant to Fed. R. Civ. P. 56(c). *See Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996). We examine the record in the light most favorable to the nonmoving party. *Thomas v. International Bus. Mach.*, 48 F.3d 478, 484 (10th Cir. 1995).

In this case, each of the three states where relevant acts occurred has a different statute of limitations for a breach of a written contract action. Consequently, each state has a different bar date, *i.e.*, if the cause of action arose prior to the bar date, the applicable statute of limitations precludes the right of action. Wyoming has a ten-year statute of limitations, making September 5, 1985 the applicable bar date. Wyo. Stat. Ann. § 1-3-105(a)(i) (Michie 1988). Washington has a six-year statute of limitations, making September 5, 1989 the bar date. Wash. Rev. Code Ann. § 4.16.040(1) (West Supp. 1997). Nebraska has a five-year statute of limitations, making September 5, 1990 the bar date. Neb. Rev. Stat. Ann. § 25-205(1) (Michie 1995).

According to the Plaintiffs, the Company began to implement the changes which allegedly breached the contracts of the general agents in early 1988. The

Plaintiffs' complaints, however, were not filed until September 6, 1995. Thus, where and when the Plaintiffs' cause of action actually arose is critical to the resolution of this case because the applicable Wyoming "borrowing" statute provides that "[i]f by the laws of the state or country where the cause of action arose the action is barred, it is also barred in this state." Wyo. Stat. Ann. § 1-3-117 (Michie 1988).

Plaintiffs contend the district court erred in determining their cause of action arose in Nebraska. This is so, Plaintiffs argue, because the district court incorrectly applied the holding of *Cantonwine v. Fehling*, 582 P.2d 592 (Wyo. 1978), to the facts of this case, and failed to recognize that the rule of *Cantonwine* was modified by *Stanbury v. Larsen*, 803 P.2d 349 (Wyo. 1990), *cert. denied*, 499 U.S. 960 (1991). [1]

---

[1] This court provided an alternative, and perhaps clearer statement of Wyoming law in *Mullinax Eng'g Co. v. Platte Valley Constr. Co.*, 412 F.2d 553 (10th Cir. 1969), where we held that "[u]nder Wyoming law, 'where a contract is made in one state to be performed in another, the law of the state of performance will govern unless it shall clearly appear that the parties intended otherwise.'" *Mullinax Eng'g Co.*, 412 F.2d at 555 (quoting *J.W. Denio Milling Co. v. Malin*, 165 P. 1113, 1116 (1917)). However, the Plaintiffs would fare no better under this statement of the rule than under *Cantonwine* and *Stanbury*. As we discuss *infra*, Nebraska is the state where most of the performance occurred with respect to the alleged breaches. Moreover, the choice of law provisions in the contracts forming the basis of the Plaintiffs' claims all evidence the parties shared intent to have Nebraska law govern. Thus, under *Mullinax* the law of Nebraska would govern, and Plaintiffs' claims would be barred by Nebraska's five-year statute of limitations.

In *Cantonwine* , the Wyoming Supreme Court had to resolve where and when a cause of action for failure to honor several promissory notes arose, in order to determine the applicable statute of limitations. *Cantonwine* , 582 P.2d at 596-98. In applying Wyoming's borrowing statute, the Wyoming court turned to the standard for determining where and when a cause of action arises adopted previously by the Kansas Supreme Court:

> The cause of action arises when that is not done which ought to have been done, or that is done which ought not to have been done. But the time when the cause of action arises determines also the place where it arises; for when that occurs which is the cause of action, the place where it occurs is the place where the cause of action arises.

*Id*. at 597 (quoting *Bruner v. Martin* , 93 P. 165, 166 (Kan. 1907) (citation omitted)) (emphasis omitted). Importantly, the *Cantonwine* court was further constrained in making its determination by a Wyoming statute which specified when a cause of action on a demand instrument arises. *Id*. at 597-98.

In *Stanbury* , the Wyoming Supreme Court again was asked to determine where a cause of action on an unpaid promissory note arose in order to ascertain the applicable statute of limitations under the Wyoming borrowing statute. *Stanbury* , 803 P.2d at 352-53. The *Stanbury* court concluded the Wyoming statute on demand notes had been applied too broadly in *Cantonwine* and narrowed the interpretation accordingly. *Stanbury* , 803 P.2d at 353. However,

-7-

there is nothing in *Stanbury* to suggest the Wyoming Supreme Court altered its earlier approval of the *Bruner* analysis as the generally appropriate means of determining when and where a cause of action arises. Moreover, in applying *Cantonwine* and *Stanbury* to determine when and where the Plaintiffs' cause of action arose, we must be sensitive to the differences between the instruments at issue in those cases, promissory notes, and the contracts at issue herein.

This court's task in determining when and where the cause of action in this case arose is complicated by the Plaintiffs' rather fluid characterization of the alleged breach or breaches of the contracts at issue. In their statement of the "undisputed facts," the Plaintiffs indicate multiple breaches occurred:

> The plaintiffs contend that these changes, which occurred over a period of time, culminated in an overall breach of the contracts which were entered into by the [D]efendants' general agents. Ultimately, this series of breaches had the desired effect of forcing the Defendants' general agents into resigning from their agencies ....

This characterization comports with the district court's treatment of the Plaintiffs' claims as three alleged breaches (the Company's imposition of sales quotas, discriminatory pricing, and withdrawal of products), *i.e.*, a "series of breaches."

However, the Plaintiffs also contend, for purposes of determining *when* their cause of action arose, that the changes implemented by the Company,

specifically the implementation of sales quotas, "did not 'breach' their contract with the plaintiffs in 1988." Instead, the Plaintiffs claim the Company's conduct "amounts to an 'anticipatory repudiation' of the contract entered into with the plaintiffs and not an actual 'breach.'" Thus, according to the Plaintiffs, they were innocent parties allowed to "wait and see if the other party will ultimately perform under the contract." Therefore, their argument goes, the "statute of limitations did not begin to run until 1990 when the defendants made further performance impossible and the plaintiffs terminated their contracts." From this line of reasoning, the Plaintiffs conclude the actual breach did not occur "until the [Company] materially failed to perform by making performance on the part of the plaintiffs impossible," and this did not occur "until 1990 in Washington and Wyoming." Consequently, the Plaintiffs claim, the district court erred in fixing the time when their cause of action arose. We disagree.

The Wyoming Supreme Court has described a repudiation of a contract or an anticipatory breach as "'one committed before the time has come when there is a present duty of performance, and is the outcome of words or acts evincing an intention to refuse performance in the future.'" *J.B. Service Court v. Wharton*, 632 P.2d 943, 945 (Wyo. 1981) (quoting 17 Am. Jur. 2d Contracts § 448 (1964)). In determining whether a party to a contract has committed an anticipatory

breach, "'it is the intention manifested by his acts and words which controls, and not his secret intention.'" *Id*. (quoting 17 Am Jur. 2d Contracts § 448 (1964)). Nothing in the documentation concerning the Company's implementation of quotas evinces an intention by the Company to refuse performance in the future. Plaintiffs themselves admit that when the changes were instituted, the Company "at that time indicated only their intent to apply minimum production standards over a three-to-five year period of time, without the stated objective of eliminating all general agents by the end of December 1992." Plaintiffs provide no evidence they contemporaneously recognized the Company's implementation of quotas in 1988 as an "anticipatory breach." "'A mere request for a change in the terms ... of the contract is not in itself enough to constitute a repudiation.'" *Id.*, 632 P.2d at 945 (quoting Corbin, Corbin on Contracts § 973, at 905-06 (1951)).

Thus, notwithstanding the Plaintiffs' strenuous, if not strained, efforts to somehow portray the Company's implementation of and on-going efforts to enforce sales quotas as an anticipatory repudiation of the contracts, we agree with the analysis of the district court. Under the general principle of *Cantonwine*, the Company's decision to impose sales quotas was the action "which ought not to have been done," and Plaintiffs' cause of action, if any, arose in 1988 when that decision was made. *See* 582 P.2d at 597. We also note that the factual record is

consistent with our legal conclusion; the former general agents recognized the Company's decision to impose sales quotas as a breach of their contracts when the decision was made in 1988.

The district court determined the other two alleged breaches, discriminatory pricing and withdrawal of products, also occurred more than five years before the Plaintiffs filed their claims. The record indicates the Company practice of charging discriminatory rates to general agents was in place in 1988. The withdrawal of certain products from sale by general agents occurred prior to June 1990. On appeal, Plaintiffs provide no evidence or argument to the contrary.

Accordingly, we reject Plaintiffs' claim that the district court erred in determining when the alleged breaches of the contracts occurred. The cause or causes of action arising from the imposition of the sales quotas and discriminatory pricing arose in 1988. Any cause of action based on the withdrawal of products had arisen by June of 1990.

Plaintiffs further contend the district court erred in determining *where* their cause of action arose. They claim under *Stanbury* "the test" for determining where a cause of action arises is "where performance is to be made." *See*

-11-

*Stanbury* , 803 P.2d at 353.  Plaintiffs claim performance was to occur in Wyoming and Washington, where the general agencies were located.  In support of this claim, the Plaintiffs point to the fact that each general agent was assigned to a geographic territory in Wyoming and Washington, and was required to conduct operations in that area; all their business was written in Wyoming and Washington; and they were prevented from performing their duties in Wyoming and Washington when the sales quotas were enforced.

But Plaintiffs' designation of the place of performance presupposes their characterization of the breach as the Company's "making performance on the part of the plaintiffs impossible."  The breaches actually alleged were changes in administrative practices made by the Company from their home offices in Omaha, Nebraska.  The performance complained of is that of the Company, and took place in Nebraska.

Because the act or acts "which ought not to have been done," the alleged breaches of the contracts, were decisions made and implemented in Nebraska, Plaintiffs' cause or causes of action arose in Nebraska.  Under Wyoming's borrowing statute, the court must apply the Nebraska five-year statute of limitations.  Coupled with our finding that the alleged breaches occurred prior to

September 5, 1990, we conclude each of the Plaintiffs' claims is time-barred.

Accordingly, the decision of the district court is **AFFIRMED** .

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge