Argued July 23, affirmed September 20, 1976

In the Matter of the Estate of Eltie E. Culver,
Deceased

CULVER, *Appellant,*

*v.*

ANDRES, *Personal Representative-Respondent,*

MORRIS, *Objector-Corespondent.*

(No. 27395, CA 5558)

554 P2d 541

*T. W. Churchill,* Salem, argued the cause for appellant. With him on the briefs were McKinney, Churchill and McKinney, and Churchill & Leonard, Salem.

Harold Eichsteadt and Eichsteadt, Bolland & Engle, Woodburn, as attorneys for Personal Representative-Respondent, joined in the brief of Objector-Corespondent.

*J. Michael Alexander,* Salem, argued the cause for Objector-Corespondent. With him on the brief were Brown, Burt & Swanson, P.C., Salem.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

FORT, J.

## FORT, J.

Claimant appeals from an order of the circuit court allowing the objection of his sister to his claim against the estate of their mother.

While in the service overseas during World War II and thereafter while employed overseas, claimant sent a series of money payments to his mother. He did not know the total sent, but was sure it amounted to several thousand dollars. He instructed her to use any of it she needed for herself and if there was any left to save it for him. In 1948, upon his return, his mother presented him with a promissory note payable "on demand after date" for $2,000, bearing interest at six per cent per annum, and signed it in his presence. According to his testimony, his mother made three payments to him: $20 on April 10, 1953; $40 on June 28, 1960; and $30 on July 6, 1971, the latter confirmed by testimony of his daughter. Notations of each payment were made soon afterward by claimant on the back of the note. At no time during her lifetime did he ever ask her for payment. After her death in 1974, claimant submitted a claim to her estate for the balance of the note plus interest. The administrator allowed the claim. A daughter of the deceased filed objections thereto. After hearing, the court upheld the objection and disallowed the note.

██ The general view is that a promissory note payable "on demand" is due immediately without an actual demand, and the statute of limitations commences to run against the note from the date of its execution and delivery and not from the date of demand. Annotation, 71 ALR2d 284, 290, § 3 (1960). The view has also been taken that a note payable "on demand after date" becomes due and payable, without a demand, on the day after its date, and the statute of limitations begins to run from that day, Annotation, 71 ALR2d, supra at 296, § 4. No Oregon cases have been called to our attention on this issue, and we accordingly adopt the general view as summarized in the above annotation.

Therefore, the statute of limitations began to run here on May 7, 1948.

The applicable statute of limitations on an action for the debt is six years, ORS 12.080. More than six years passed between the first and second payments and between the second and third payments. Six years have not passed between the third payment and assertion of his claim.

■■ The effect of part-payment of a debt upon the running of the statute of limitations is addressed by two statutes. ORS 12.240 provides:

> "Whenever any payment of principal or interest is made after it has become due, upon an existing contract, whether it is a bill of exchange, promissory note, bond, or other evidence of indebtedness, the limitation shall commence from the time the last payment was made."

This provision has been construed to apply only to payments made *before* the statute of limitations has completely run. *Creighton v. Vincent,* 10 Or 56 (1881); *Dundee Investment Co. v. Horner,* 30 Or 558, 48 P 175 (1897); *Eastman, Executrix, v. Crary,* 131 Or 694, 284 P 280 (1930). Here the statute of limitations had run between the first and second payments as well as between the second and third payments, and therefore ORS 12.240 is irrelevant to the questions at hand.

However, under ORS 12.230,[1] a payment made on a debt *after* the statute of limitations has run might revive the legal obligation and permit an action to be maintained, *Marshall v. Marshall,* 98 Or 500, 194 P 425 (1921); *Eastman, Executrix, v. Crary, supra; Creighton v. Vincent, supra.*

■ The Oregon Supreme Court has specified the facts which must be shown in order to revive the legal

---

[1] ORS 12.230:

"No acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this chapter, unless the same is contained in some writing, signed by the party to be charged thereby; but this section shall not alter the effect of any payment of principal or interest."

obligation. In *Harding v. Grim,* 25 Or 506, 36 P 634 (1894), the court stated:

"* * * The law is settled that where a specific sum of money is due upon a promissory note, a payment of a part of the debt is a sufficient acknowledgment to authorize the presumption of a promise to pay the remainder; but to raise an implied promise from a part payment of a debt, which will prevent the debtor from availing himself of the bar of the statute, *it must appear to have been made and intended as an unqualified part payment of the debt in suit.* 'It must be shown to be a payment of a portion of an admitted debt, and *paid to, and accepted by, the creditor as such, accompanied by circumstances amounting to an absolute and unqualified acknowledgment of more being due,* from which a promise may be inferred to pay the remainder. * * *' Wood on Limitations, § 97. * * * '* * * *If there be accompanying circumstances which repel the presumption of a promise or intention to pay; or, if the expressions be equivocal, vague, and indeterminate, leading to no certain conclusion,* but at best to probable inferences, which may affect different minds in different ways, it has been held that *they ought not to go to a jury as evidence of a new promise, to revive the cause of action*': 2 Greenleaf, Evidence, § 440. * * *" 25 Or at 510-11. (Emphasis supplied.)

*See also: Dundee Investment Co. v. Horner, supra; Eastman, Executrix, v. Crary, supra.* In *Eastman* the court quoted *Harding* above and phrased the inquiry as "Did the defendant *voluntarily* make a part payment on the [note] * * * *with the intention then and there to acknowledge the balance due thereon?"* (Emphasis supplied.) 131 Or at 698.

■ The question presented is whether these facts are shown here. As this court has de novo review, we look to see if claimant has established by a preponderance of the evidence that at the time his mother made the 1971 payment and he accepted it they each had the intent necessary to revive the legal obligation against which the statute of limitations had already run.

The 1971 payment was made at the end of a visit to

decedent made by claimant, his daughter and his daughter's two children. Claimant testified as to the circumstances surrounding the payment:

"Well, we was getting all ready to go home and was packing up the stuff and getting in the truck, and my daughter and her two children was there because her and her husband had just broke up before that, so I took her along on the trip.

"* * * * *

"And she was getting the children in the truck and my mother was trying to give each one of them $10 apiece.

"* * * * *

"* * * Well, she said, 'Being that you're getting a divorce and all, you need some money,' and tried to give them $10 apiece to go along on, and they wouldn't accept it, they had money. And then [decedent] come to me and said—

"* * * * *

"* * * 'Here's $30 and you can spend it on them any way you want to'—she says, 'For the children, to spend it on them when you go.' And I said, 'No, I've got money'—I said, 'I don't need it to spend on them, I've got enough money.' And she said, 'Well, put it on the note,' and so that's the way she wanted it, for it to be put on the note, because I wouldn't have accepted the money right straight out like that.

"Q Did you take the money then?

"A Yes. I hesitated a little bit and then I took the money and put it in my pocket.

"Q And did you at the time you took this money, did you have this promissory note * * *?

"A No, that was down in California at my home."

Claimant's daughter corroborated that

"* * * she was trying to give the money to me at first. And he was refusing it, and she just said, 'Put it on the note,' at that time. And so he took the money.

The decedent thus offered the money three different ways in the space of a few minutes. First she offered it directly to her granddaughter and great grandchildren as a gift. Upon their refusal to accept it,

she tried to make an indirect gift to them through her son, but he, too, refused to accept it as a gift to them. Finally, she offered it to him again, saying, "Well, put it on the note." Viewed in isolation, this statement accompanying a transfer of money might reveal intent to make part payment of a debt, acknowledging more to be due. However, *Harding* clearly requires us to look further, to assess any such statements and actions in light of their surrounding circumstances. Here the reason the decedent initially approached claimant and his family with the $30 was to make a gift to her granddaughter and great grandchildren. The note was not in front of them and she knew that he did not need money. Under such circumstances we conclude that when she said, "Well, put it on the note," it was in the belief that this would be the means of getting him to accept and use the money in accordance with her clear desire to make a gift to her granddaughter and great grandchildren. Thus we conclude she had not formed the intent then and there to acknowledge the balance due on the note and make part payment against it. The experienced trial judge, who saw and heard the witnesses, reached a similar conclusion. He was in a better position than are we to evaluate the credibility of the witnesses. *Omlie v. Hunt,* 211 Or 472, 316 P2d 528 (1957); *Hannan v. Good Samaritan Hosp.,* 4 Or App 178, 471 P2d 831, 476 P2d 931 (1970), Sup Ct *review denied* (1971).

We conclude that the statute of limitations had run on decedent's legal obligation to pay the note, and the evidence surrounding the $30 1971 payment to claimant, primarily for the use and benefit of her granddaughter and her great grandchildren, rendered it insufficient to revive that legal obligation. His claim against her estate was properly disallowed.

Affirmed.