In re **SILVER WHEEL FREIGHT-LINES, INC., an Oregon corporation, Debtor.**

George **BROWNING, Jr. and Margene Boothe Browning, Plaintiffs,**

v.

Everette H. **WILLIAMS, Trustee for Silver Wheel Freightlines, Inc., an Oregon corporation, Defendant.**

Everette H. **WILLIAMS, Trustee for Silver Wheel Freightlines, Inc., an Oregon corporation, Plaintiff,**

v.

George **BROWNING, Jr., Defendant.**

**Bankruptcy No. 382–03538–S7.
Adv. Nos. 84–0093–S, 85–0444–S.**

United States Bankruptcy Court, D. Oregon.

March 7, 1986.

See also 57 B.R. 476.

Bradley O. Baker, Portland, Or., trustee.

Everette H. Williams and Albert N. Kennedy, Portland, Or., for the Brownings.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW GRANTING JUDGMENT TO TRUSTEE AGAINST GEORGE BROWNING, ALLOWING OFFSETS AND ADMINISTRATIVE CLAIM TO MARGENE BROWNING

DONAL D. SULLIVAN, Bankruptcy Judge.

George Browning ("Browning") and his wife (collectively "the Brownings") filed an action against Everette Williams, the chapter 7 trustee ("trustee"), to recover possession of the former freight terminal of Silver Wheel Freightlines, Inc. ("the debtor") and for administrative rent arising from the debtor's use of the terminal during the chapter 11 and chapter 7 operation. Browning was the former president and major shareholder of the debtor who in 1979 withdrew from management, transferred his stock to his brother and George Grill ("Grill"), the chief operating officer, and continued with the debtor as a "consultant". The trustee surrendered the terminal, disputed the rent claim and counterclaimed and cross-claimed for recovery of post-filing rent increases, for recovery of $358,333 in "consulting fees" paid to Browning before chapter 11, and for recovery of a $20,000 pre-petition lease deposit.

The trustee, in a separate complaint which the Court consolidated for trial, also sought recovery of $261,430 representing prior indebtedness owed by Browning to the debtor which his brother and Grill also discharged in 1979 when Browning withdrew from ownership and active management of the debtor.

Previously the Court found on summary judgment that the debtor was insolvent at all relevant times but that Oregon's three-year statute of limitation partially barred the trustee from recovery under O.R.S. 57.-231 governing corporate directors' liability. This matter is a core proceeding under 28 U.S.C. § 157(b) and as such is susceptible of final determination by this Court.

Plaintiffs should recover administrative rent for the use of the freight terminal during the chapter 11 and chapter 7 operation reduced by sums previously paid in excess of what the Court herein finds as reasonable. The trustee should recover from Browning all compensation paid to him as a "consultant" and those sums which he owed to the debtor which were purportedly discharged by the 1979 agreements. George Browning's recovery may be offset against the trustee's recovery. The trustee should not recover any of the rent payments made by the chapter 11 debtor-in-possession or the $20,000 lease deposit. My reasons follow.

### THE POST–FILING RENT AND LEASE DEPOSIT

Silver Wheel Freightlines, Inc. filed chapter 11 on November 4, 1982. The Court converted the case to chapter 7 on July 1, 1983. At the time of filing chapter 11, the debtor leased its main freight terminal in Portland, Oregon from the Brownings pursuant to a lease executed in 1971, amended in 1977, and scheduled to expire on December 31, 1982. Without Court approval, George Grill, then president of Silver Wheel, and the Brownings executed a new two-year lease increasing the lease payments from $3,600 per month to $6,750 per month. Simultaneously, the debtor agreed to forfeit a $20,000 lease deposit made

years before in exchange for the Brownings forgiveness of the debtor's lease defaults arising from its failure to maintain the premises. The parties did not dispute that at the time of the new lease the terminal was in severe disrepair and was also a target for at least partial condemnation by the state highway authorities. In the process, the debtor gave up an option under the old lease to acquire the terminal from Browning at a price of $375,000. Browning admitted he subsequently received approximately $600,000 from the state for the terminal. The debtor paid rent under the new lease up until the end of October 1983, and the trustee vacated the terminal in April 1984.

The post-filing lease and settlement agreement are void under 11 U.S.C. § 549(a) because they were post-bankruptcy transactions which were out of the ordinary course of business and which were not authorized either by the Code or the Court. Nevertheless, the Brownings are entitled to the reasonable rental value of the premises for the post-chapter 11 period of occupancy by the debtor-in-possession. *Brown v. Danning* (*In re Frederick Meats*), 483 F.2d 951 (9th Cir.1973). In addition, the Brownings have the right to setoff breaches of the lease against the lease deposit. 11 U.S.C. § 553(a).

The rent of $6,750 called for under the post-filing lease was excessive. The Brownings' claim for administrative rent for the unpaid six-month period should be reduced to the extent that payments made by the debtor-in-possession during the first ten months of the lease exceeded the reasonable rental value of the premises. Considering the uncertainty of long-term occupancy arising from the imminent condemnation of at least part of the terminal, the general state of decay, and the testimony of the conflicting appraisers, the post-filing agreement which almost doubled the rent was unjustified and was unreasonable. Relying on available presumptions and the testimony, the reasonable rental of the property under the circumstances should not have exceeded the $3,600 per month

plus insurance and taxes called for under the old amended lease. *Union Leasing Co. v. Peninsula Gunite, Inc. (In re Peninsula Gunite, Inc.)*, 24 B.R. 593, 595 (Bankr. 9th Cir.1982).

The debtor-in-possession and the trustee should have paid $89,797 for the post-lease use of the terminal. This figure consists of rent for 16 months, from January 1, 1983 through April of 1984 at $3,600 per month, taxes for the full post–11 period of $29,866, and insurance of $2,331. They actually paid rent of $67,500 for ten months. This leaves combined chapter 11 and chapter 7 unpaid rent of $22,297 of which, on a pro-rata basis, $8,361.38 would be a chapter 7 administrative expense and $13,935.62 would be a chapter 11 administrative expense. Based upon a lack of other evidence and Oregon's presumption of equal ownership of property jointly owned by spouses, Mrs. Browning should be paid half of the foregoing amounts as an administrative expense. *Brazell v. Meyer*, 42 Or.App. 179, 600 P.2d 460 (1979); O.R.S. 107.105(f).

The Brownings should not be required to return to the trustee the pre-petition $20,-000 lease deposit because they may offset this obligation against the debtor's liability to pay the landlord for its failure to maintain the premises during the life of the lease. Under the testimony, the damage to the premises went beyond ordinary wear and tear but was directly attributable to the debtor's failure to maintain the premises over the years of usage under the lease. This damage is enough to cause the forfeiture of the deposit.

## THE FRAUDULENT CONVEYANCE CLAIMS

In 1979 the debtor and its related entities were insolvent in both the balance sheet sense and the equitable sense. Browning, who had been the chief executive officer, a director and major shareholder in the debtor for the prior 15 years, decided at that time to withdraw from the company. To accomplish this, he entered into a series of agreements on March 29, 1979 with his brother, Ben Browning, who was not then a shareholder but was attorney for the company, and Grill, who was then the chief operating officer and the owner of about one-third of the outstanding stock. Under one agreement, the debtor hired Browning as a "consultant" for compensation of $1,250,000 payable monthly over a period of ten years. Absent fraud or other named cause, the agreement required payment of this sum even if Browning died.

Under other related agreements, Browning conveyed his stock to Grill and his brother both of whom, among other things, agreed to discharge and to hold Browning harmless from an existing obligation to repay $194,501.35 to the debtor, which debt Browning acknowledged as owing. In fact, the company cancelled the stock and reissued new stock to Grill and Ben Browning. At the time, all parties acknowledged that the debtor as of November 30, 1978, had a negative net worth of $771,326.65 and had experienced an operating deficit for the preceding year of $214,025.53. Related entities showed proportional deficits. It was understood between George Grill and Ben Browning that each would emerge as 50% owners of the stock.

Ben Browning, as an experienced labor and transportation lawyer, hoped to turn the company around after plaintiff was removed from the company by negotiating an employee stock option program with employees. For various reasons the company did not prosper but did make most of its payments to Browning. These payments totalled $358,333, of which $89,184 was received within one year before the debtor filed chapter 11. According to the chapter 11 schedules, the company still was not paying its bills when due and its negative net worth since 1979 had grown to $3,204,-893 during the three and one-half years before filing chapter 11. There are many unpaid priority wage earners and others who supplied goods and services.

The trustee sought recovery from Browning of prior indebtedness and of all sums paid to him as a consultant pursuant to the 1979 agreements under 11 U.S.C. § 544(b) incorporating the then applicable

Oregon version of the common law *Statute of Elizabeth* and, alternatively, for recovery of sums paid within one year before filing under 11 U.S.C. § 548(a), which is the Bankruptcy Code's fraudulent conveyance statute. The trustee asserted that the debtor while insolvent received inadequate or less than a reasonably equivalent value for the transfers and that the 1979 agreement was in fraud of then existing and future creditors. The trustee also alleged that the parties made the agreement and the resulting transfers with actual intent to defraud its creditors and in violation of O.R.S. 57.231 of the corporation code. Essentially, Browning denied the trustee's allegations and, among other limitations, asserted Oregon's two-year fraud statute of limitations.

Under former O.R.S. 95.070, transfers, including release of debt while insolvent for less than "fair and adequate consideration," are voidable as fraudulent because Oregon law presumes an intent to defraud. *Bivens v. Hancock*, 71 Or.App. 273, 279; 692 P.2d 153, 157 (1984); *Nelson v. Hansen*, 278 Or. 571, 578, 565 P.2d 727, 732 (1977); *Dering v. Williams*, 378 F.2d 417 (9th Cir.1967).

■ The trustee should prevail on his 11 U.S.C. § 544(b) and § 548(a) claims and should recover from Browning both the sums paid under the 1979 agreement and the prior indebtedness discharged by the agreements. Browning's services as a consultant constituted neither reasonably equivalent value under federal law nor fair and adequate consideration under Oregon law. They were, in fact, worthless. The company was insolvent at the time of the agreement and the subsequent payments and Browning knew it. Browning's conduct established an intent to defraud even though he may have held no malice toward any particular creditor. There were unsecured creditors in existence at the times in question who still held allowable claims at the time the debtor filed for relief under the Bankruptcy Code. Therefore, the transfers were completely fraudulent under state law and fraudulent under federal law to the extent of payments made within the year preceding chapter 11. The trustee should recover all such transfers under both theories. 11 U.S.C. § 550(a)(1). Browning did not act in good faith and is not entitled to the benefit of 11 U.S.C. § 548(c) to offset any alleged pre-petition value extended by him to the debtor under the agreements. Although this case is factually less complicated, the principles of *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939) govern.

Vis-a-vis the debtor, the 1979 employment agreement and stock transfer agreement were not arms length transactions but were negotiated between brothers. Browning abused his position as the chief executive and majority shareholder. He discharged his debt to the company and stood to gain over one million dollars in return for little effort and giving up worthless stock. The company at that time was insolvent in every sense of the word and was doing badly. Under the circumstances, the discharge of a debt of $194,000 to the debtor and the creation of a $1,250,000 obligation by the debtor to Browning for consulting services which in fact had no value was unreasonable, if not unconscionable. The whole transaction was in fraud of creditors. The agreement by Grill and Ben Browning to hold Browning harmless from his obligation to repay his debts to the company stopped short of being consideration in the form of an assumption because they agreed to discharge the debt but not to pay it and to hold Browning harmless only if the debtor required payment, an event they controlled. This was effectively a forgiveness of $194,501.35 in debt at a time when the company badly needed the money.

Browning's services, exclusive of his absence from the company, had no value to the debtor and were never intended to have value. He is not entitled to be paid for his absence from an insolvent company even though that was precisely what everyone bargained for. In the mid–70s, he stopped managing the day-to-day business and, under the 1979 agreement, was not expected

to perform any services unless asked to do so by his brother and George Grill, who were not likely to give him any responsibility because they both wanted him removed from the company. They regarded him as a management deficit. Shortly after resigning, Browning gave up his office and performed no role with the company other than in a ceremonial capacity as a trade representative with various trade organizations. Grill would not have hired anyone to do what little Browning agreed to do absent the stock purchase agreement. The fact that Browning did not compete with the debtor, or pursue corporate opportunities, or seek other employment may be sufficient consideration to support enforcement of the contract against the debtor under contract principles but it is not adequate consideration flowing to the debtor under the rules governing fraudulent conveyances to insulate the payments from recovery by the debtor's trustee in bankruptcy.

Alternatively, the trustee should recover under O.R.S. 57.231 for the same reasons supporting recovery under 11 U.S.C. §§ 544(b) and 548. While a director, Browning negotiated the sale of his stock with payment to be made by the debtor when the debtor was insolvent and lacked an earned surplus. This was in violation of O.R.S. 57.221. The employment agreement was worthless and was a subterfuge to finance redemption of his stock. Subject to the three-year statute of limitations which was deemed applicable on summary judgment, the right to recover accrued when the payments were actually made.

## THE STATUTES OF LIMITATION

The trustee timely filed complaints to recover the consulting fees and the forgiven debts within two years after his appointment as required by 11 U.S.C. § 546(a)(1). Nevertheless, 11 U.S.C. § 548(a) limited recovery to payments made within one year prior to chapter 11 and 11 U.S.C. § 544(b) conditioned recovery of earlier transfers upon whether at the time of filing chapter 11 on November 4, 1982 there was in existence a creditor holding an unsecured claim who could recover under Oregon law. This depended upon whether Oregon's statute of limitations barred creditors from recovery at the time of filing chapter 11.

Browning is correct that under Oregon law fraudulent conveyance actions are subject to the two-year statute of limitations applicable to actual fraud cases. *McBride v. Farrington*, 60 F.Supp. 92 (D.Or.1945), *aff'd*. 156 F.2d 971 (9th Cir.1946); O.R.S. 12.110(1). However, the statute does not begin to run until discovery of the fraud. *Id.*; O.R.S. 12.040(4); *Dixon v. Schoonover*, 226 Or. 443, 359 P.2d 115 (1961). In Oregon, discovery occurs at such time as the victim has actual knowledge of the fraud or, using due diligence, should have known of the fraud. *Linebaugh v. Portland Mortgage Co.*, 116 Or. 1, 8, 239 P. 196, 198 (1925). Where a bankruptcy is involved, it must be shown that all creditors in existence at the time of the fraud who still hold unsecured, provable claims at the time of bankruptcy knew or should have known of the facts giving rise to the action. Constructive notice is not enough. *First Presbyterian Church v. Rabbit*, 118 F.2d 732 (9th Cir.1940).

Circumstantially, creditors at the time of chapter 11 who could have brought a fraudulent conveyance action under Oregon law at the time of the 1979 agreements or at the time payments were made cannot be reasonably held to knowledge of the consulting agreement and the payments to Browning and their fraudulent nature. This included creditors in existence in March 1979 as well as later creditors who were victimized every time a payment was made to him. While the 1980 and 1981 annual reports made some reference to various aspects of the Browning transactions, these reports were not enough to put creditors on notice of facts which, in the exercise of reasonable diligence, should have led them to actual knowledge of the fraud, particularly considering the fact that the responsible principals remained in control until the debtor's conversion to chapter 7. *See ITT, An International Investment*

*Trust v. Cornfeld,* 619 F.2d 909, 929 (2d Cir.1980).

Since the March 1979 agreements discharging Browning's debts to the debtor are avoided, the right to recover these sums should be reinstated as of the present time. Browning acknowledged these debts in the 1979 agreement and as of that time recovery was not barred. Because of the fraud, Oregon's six-year statute of limitations was stayed. *In the Matter of Culver,* 26 Or.App. 809, 554 P.2d 541 (1976). The trustee may collect the 1979 debt as an asset of the estate.

## CONCLUSION

The trustee is entitled to recover a judgment of $551,686 against George Browning. This represents the entire amount of compensation paid to him and debts forgiven under the 1979 employment agreement less a setoff of $11,148 representing his share of the administrative rent for which the estate is responsible. Mrs. Browning is entitled to an order allowing administrative claims on her behalf for $4,181 representing her share of the chapter 7 rent and $6,970 representing her share of the chapter 11 rent.

The size of the judgment against Browning adds more than a little irony to this case because there are many equities in the trustee's favor and few in Browning's. This case involved a man who used his position as the principal stockholder, director, president, and chairman of the board to withdraw over one-half million dollars in badly needed assets from a debtor which was already insolvent, while successor management solicited worker participation in an employee stock option plan in the same insolvent company. After the debtor was in chapter 11, Browning almost doubled the rent on the Portland terminal. After conversion to chapter 7 he asked for the unpaid rent and complained of lack of maintenance which he initiated and later fostered by his withdrawals. At trial, Browning compounded the irony by attempting to justify his withdrawals from the debtor by the argument, among others, that his availability as an expert consultant with many contacts in the industry was fair or reasonably equivalent value when the evidence established that the very purpose of the agreements was to accomplish his removal from the debtor's management.