**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHAEL KAISER; MARGARET J. LOEWEN, on behalf of themselves and others similarly situated, *Plaintiffs-Appellants*, | No. 19-35151 |
| | D.C. No. 3:16-cv-00744-AC |
| v. | |
| CASCADE CAPITAL, LLC; GORDON, AYLWORTH & TAMI P.C., *Defendants-Appellees.* | OPINION |

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted November 16, 2020
Seattle, Washington

Filed March 9, 2021

Before:  Ronald M. Gould and Michelle T. Friedland,
Circuit Judges, and Stephen R. Bough,[*] District Judge.

Opinion by Judge Friedland

---

[*] The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri, sitting by designation.

**SUMMARY**\*\*

**Fair Debt Collection Practices Act**

The panel reversed the district court's dismissal for failure to state a claim and remanded for further proceedings in plaintiff's action alleging that defendants violated the Fair Debt Collection Practices Act ("FDCPA") by sending a collection letter threatening litigation over time-barred debt and filing a lawsuit seeking to collect time-barred debt.

Joining other circuits, the panel held that the FDCPA prohibits filing or threatening to file a lawsuit to collect debts that were defaulted on so long ago that a suit would be outside the applicable statute of limitations. The panel held that these prohibitions regarding time-barred debts apply even if it was unclear at the time a debt collector sued or threatened suit whether a lawsuit was time barred under state law. The panel concluded that plaintiff's debt was time barred under Oregon's four-year statute of limitations. Accordingly, plaintiff's complaint stated a claim for relief under the FDCPA.

The panel emphasized, however, that debt collectors can avoid liability by successfully asserting the FDCPA's affirmative defense for bona fide errors. The panel held that a mistake about the time-barred status of a debt under state law could be such an error. The panel left it to the district court to consider in the first instance whether a bona fide error defense, if raised on remand, could succeed in this case.

---

\*\* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Mark G. Passannante (argued), Broer & Passannante PS, Portland, Oregon; Bret Knewtson, Hillsboro, Oregon; for Plaintiffs-Appellants.

Kelly F. Huedepohl (argued), Gordon Rees Scully Mansukhani, LLP, Portland, Oregon, for Defendants-Appellees.

**OPINION**

FRIEDLAND, Circuit Judge:

The Fair Debt Collection Practices Act ("FDCPA") prohibits debt collection practices that are misleading, unfair, or unconscionable. Those prohibited practices include filing or threatening to file a lawsuit to collect debts that were defaulted on so long ago that a suit would be outside the applicable statute of limitations. The parties ask us to decide whether the FDCPA's prohibitions regarding such "time-barred debts" apply even if it was unclear at the time a debt collector sued or threatened suit whether a lawsuit was time barred under state law.

We hold that they do. The FDCPA takes a strict liability approach to prohibiting misleading and unfair debt collection practices, so a plaintiff need not plead or prove that a debt collector knew or should have known that the lawsuit was time barred to demonstrate that the debt collector engaged in prohibited conduct. Because the district court held the opposite, we reverse and remand for further proceedings.

We emphasize, however, that debt collectors could avoid liability by successfully asserting the statute's affirmative defense for bona fide errors.  A mistake about the time-barred status of a debt under state law may be such an error.  We leave it to the district court to consider in the first instance whether a bona fide error defense, if raised on remand, could succeed in this case.

I.

Plaintiff Michael Kaiser purchased a car under a retail installment sale contract.[1]  He defaulted on his payments, and his car was repossessed and sold.  The proceeds from the sale failed to cover the outstanding balance under the contract, and Kaiser did not pay the remaining amount due.  Years later, the creditor, Defendant Cascade Capital, LLC, sought to collect that deficiency balance.  It hired a law firm, Defendant Gordon, Aylworth & Tami, P.C. ("GAT"), to represent it.  GAT sent Kaiser a letter that stated the firm "ha[d] been retained with the authority to file a lawsuit" against him and demanded payment of the outstanding debt.[2]  Kaiser failed to pay, and Defendants (collectively, "Cascade") sued him in Oregon state court.

The collection attempts—both the letter and the lawsuit—occurred between four and six years after Kaiser's default.  Kaiser responded to Cascade's state court lawsuit by arguing that the debt was time barred under Oregon's four-year statute of limitations for sale-of-goods contract

---

[1] A retail installment sale contract permits a consumer to pay the purchase price of a car over multiple installments.  *See* Or. Rev. Stat. § 83.510(11).  The car itself serves as collateral to secure payment.  *See id.*

[2] The letter is reproduced at the end of this opinion.

claims, Or. Rev. Stat. § 72.7250. Cascade countered that Oregon's six-year statute of limitations for other contract claims, Or. Rev. Stat. § 12.080, applied instead. The state court ruled for Kaiser.

Kaiser then filed this putative class action in the United States District Court for the District of Oregon.[3] He alleged that Cascade violated the FDCPA by threatening litigation over time-barred debt in its collection letter and by filing a lawsuit to collect time-barred debt. The district court dismissed for failure to state a claim, reasoning in part that Cascade did not violate the FDCPA because the state statute of limitations had been unclear when Cascade attempted to collect the debt.[4] Kaiser timely appealed.

## II.

We review de novo an order granting a motion to dismiss, taking all factual allegations as true. *Naruto v. Slater*, 888 F.3d 418, 421 (9th Cir. 2018). We also review de novo a district court's interpretation of a federal statute. *United States v. Pacheco*, 977 F.3d 764, 767 (9th Cir. 2020).

When the application of a federal statute depends on state law, "federal authorities must apply what they find to

---

[3] Kaiser was joined as a named plaintiff by Margaret J. Loewen. Loewen's allegations were substantially identical to Kaiser's, except that she alleged that Cascade voluntarily dismissed its suit against her before the state court reached a judgment. Because this factual difference does not affect our analysis, we refer only to Kaiser in the opinion.

[4] Kaiser's operative Complaint also included another claim, which the district court dismissed as both procedurally improper and substantively deficient. Kaiser does not contest the procedural basis for the dismissal, so we treat that claim as properly dismissed and do not address its substance.

be the state law." *Comm'r v. Bosch's Est.*, 387 U.S. 456, 465 (1967). Absent controlling precedent from the state supreme court, a federal court must "predict how the highest state court would decide the [state law] issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Judd v. Weinstein*, 967 F.3d 952, 955–56 (9th Cir. 2020) (quoting *Lewis v. Tel. Emps. Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996)). We review de novo a district court's interpretation of state law. *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 665 (9th Cir. 2003).

## III.

## A.

We first address whether Kaiser's debt was time barred under Oregon law. The status of the debt turns on which statute of limitations would govern a lawsuit to collect the debt. The applicable statute of limitations depends on whether a lawsuit to recover the deficiency balance on Kaiser's retail installment contract would more closely relate to the portion of the contract for the underlying sale of the car or the portion of the contract creating the security interest in the car. If the lawsuit would more closely relate to the sale portion, then a four-year statute of limitations would apply; otherwise, a six-year statute of limitations would. *Compare* Or. Rev. Stat. § 72.7250 (requiring claims of breach of contract for a sale of goods to be brought within four years), *with id.* § 12.080 (requiring other contract claims to be brought within six years).[5]

---

[5] Once we determine the applicable statute of limitations, we must apply that interpretation of Oregon law to the parties' dispute here—even

The Oregon Supreme Court has made a statement in passing that helps inform this decision: "[A]n action [by a creditor] for part of the purchase price is more closely related to the sale portion of the contract than it is to the security portion." *Chaney v. Fields Chevrolet Co.*, 503 P.2d 1239, 1241 (Or. 1972); *see also* 68A Am. Jur. 2d *Secured Transactions* § 565, Westlaw (database updated Feb. 2021) ("[T]he action of the creditor to recover a deficiency judgment from a credit buyer of goods is in substance an action to recover the balance of the purchase price and is therefore subject to the statute of limitations applicable to such actions."). Because no subsequent authority contradicts or casts doubt on that statement in *Chaney*, we predict that the Oregon Supreme Court would hold that the four-year statute of limitations would apply to a suit to collect on Kaiser's debt.[6]

Two other considerations support this prediction. First, the four-year statute of limitations for breaches of contract for a sale of goods originated from Oregon's codification of

---

if the state law was previously unclear. When Oregon courts interpret statutes, they apply a newly announced interpretation of a statute retrospectively to the dispute that prompted it. *See Halperin v. Pitts*, 287 P.3d 1069, 1077 & n.4 (Or. 2012) (declining to give prospective-only effect to statutory interpretation and expressing constitutional doubts about the court's power to give purely prospective effect to rulings). Our own practice is the same. *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312–13 (1994) ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.").

[6] The Oregon state court concluded the same when it granted judgment for Kaiser in Cascade's suit. Although Kaiser prevailed in state court on his statute-of-limitations defense, he does not assert issue preclusion here, and we decline to address it sua sponte. *See Herrera v. Wyoming*, 139 S. Ct. 1686, 1701 n.5 (2019).

Article 2 of the Uniform Commercial Code ("U.C.C."). *See* Or. Rev. Stat. § 72.7250. Oregon applies Article 2 to sales transactions with a security element unless the "collateral is transferred by a debtor to a creditor solely as security." *All-States Leasing Co. v. Ochs*, 600 P.2d 899, 907 n.9 (Or. Ct. App. 1979). No collateral was transferred to a creditor solely as security here, so we expect Oregon would extend the Article 2 statute of limitations to a suit to collect Kaiser's debt.

Second, our prediction aligns with Oregon's preference for interstate uniformity when interpreting the U.C.C. *See* Or. Rev. Stat. § 71.1030(1)(c) (explaining that one purpose of the U.C.C. is "[t]o make uniform the law among the various jurisdictions"); *Schultz v. Bank of the W., C.B.C.*, 934 P.2d 421, 424 (Or. 1997) (examining other states' judicial decisions to interpret the U.C.C.). A clear majority of other states apply the Article 2 statute of limitations for sales of goods to actions to recover deficiency balances after repossession of the good. *See, e.g.*, *Suntrust Bank v. Venable*, 791 S.E.2d 5, 7–9 (Ga. 2016) (describing and adopting the majority view); *Coastal Fed. Credit Union v. Brown*, 790 S.E.2d 417, 420–22 (S.C. Ct. App. 2016) (same); *see also Assocs. Disc. Corp. v. Palmer*, 219 A.2d 858, 860–61 (N.J. 1966) (holding the same, and cited by *Chaney*, 503 P.2d at 1240–41). Given this, we have great confidence that the Oregon Supreme Court would hold the four-year statute of limitations would apply to a suit on Kaiser's debt.

Accordingly, we proceed on the understanding that Kaiser's debt was time barred at the time Cascade attempted to collect it.

B.

We now address the legality of Cascade's conduct under the FDCPA given that the debt was time barred.  We join our sister circuits in holding that attempts to collect on time-barred debt through a lawsuit or threat of suit violate the FDCPA.  Whether Cascade may have been unsure of the legal status of the debt under Oregon state law does not affect this conclusion—though, as we explain, it affects Cascade's ability to assert a bona fide error defense to liability.

1.

The FDCPA prohibits debt collectors from using any "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.[7]  It also prohibits using "any false, deceptive, or misleading representation" to collect a debt, including any "false representation of the character, amount, or legal status of any debt" and any "threat to take any action that cannot legally be taken."  *Id.* § 1692e, (2)(A), (5).  We hold that lawsuits to collect time-barred debts are both unfair and misleading, violating § 1692f and § 1692e respectively, and threats to sue on time-barred debts are at least misleading, violating § 1692e.[8]

---

[7] Cascade has not contested the sufficiency of Kaiser's allegations that it is a "debt collector" subject to the FDCPA.  *See* 15 U.S.C. § 1692a(6) ("The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts."); *McAdory v. M.N.S. & Assocs., LLC*, 952 F.3d 1089 (9th Cir. 2020) (holding that a creditor can also be a debt collector), *cert. denied*, 141 S. Ct. 627 (2020).

[8] We need not decide whether filing or threatening suit on time-barred debt violates other sections of the FDCPA because even a single

Suing to collect on an unenforceable debt is patently unfair to the consumer.  Empirical evidence gathered by the Federal Trade Commission indicates that the vast majority of suits on time-barred debt will lead to default judgments, even though the debts are unenforceable, "because 90% or more of consumers sued in these actions do not appear in court to defend."  Fed. Trade Comm'n, *The Structure and Practices of the Debt Buying Industry* 45 (2013).  Even the rare consumer who understands that the statute of limitations could be raised as a defense is likely to "give in rather than fight the lawsuit because she must still expend energy and resources and subject herself to the embarrassment of going into court."  *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1079 (7th Cir. 2013) (quoting *Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1487 (M.D. Ala. 1987)).

Both suing and threatening to sue on time-barred debts also misrepresent the legal enforceability of those debts, and thus are false or misleading under 15 U.S.C. § 1692e.  Suing or threatening to sue on a debt implicitly represents that the debt is legally enforceable, at least absent a clear disclaimer to the contrary.  "Whether a debt is legally enforceable is a central fact about the character and legal status of that debt. A misrepresentation about that fact thus violates the FDCPA."  *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014).  In embracing this conclusion, we join the unanimous consensus of our sister circuits.  *See, e.g.*, *Holzman v. Malcolm S. Gerald & Assocs., Inc.*, 920 F.3d 1264, 1270 (11th Cir. 2019) ("There is no question that these provisions [of 15 U.S.C. § 1692e] prohibit a debt

---

violation supports a claim for relief.  *See Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1125 & n.14 (9th Cir. 2014).

collector from suing or threatening to sue on a time-barred debt, and federal courts have uniformly so held.").[9]

This conclusion is consistent with our opinion in *Stimpson v. Midland Credit Management, Inc.*, 944 F.3d 1190 (9th Cir. 2019). In *Stimpson*, a debt collector sent a collection letter regarding a time-barred debt, but the letter disclosed the time bar, thereby eliminating any implicit representation of legal enforceability. *See id.* at 1196. We held that "[t]he natural conclusion [from the disclosure in the letter] is that the debt is time barred. Nothing in the letter falsely implies that [the debt collector] could bring a legal action against Stimpson to collect the debt." *Id.* at 1197. As Cascade points out, we did explain that "there is nothing inherently deceptive or misleading in attempting to collect a valid, outstanding debt, even if it is unenforceable in court." *Id.* at 1200. But that explanation did not address letters that fail to reveal that a debt is time barred. Indeed, we distinguished the effective disclosure in *Stimpson* from

---

[9] *See also Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 683 (7th Cir. 2017) ("[A] debt collector also violates the Act by threatening to sue to collect such a [time-barred] debt."); *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 512 (5th Cir. 2016) ("[A] debt collector violates the FDCPA when it uses language in its collection letter that would mislead an unsophisticated consumer into believing that the debt is legally enforceable." (quotation marks, citation, and alteration omitted)); *Nelson v. Midland Credit Mgmt., Inc.*, 828 F.3d 749, 751 (8th Cir. 2016) ("Even if—as here—the debt collector does not make express misrepresentations, the FDCPA bars a debt collector from filing or threatening a lawsuit to collect a time-barred debt."); *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 398–99 (6th Cir. 2015) (holding that misleading statements about the enforceability of a debt in court violate the FDCPA); *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 33 (3d Cir. 2011) (per curiam) (holding that the FDCPA prohibits a debt collector from "initiat[ing] or threaten[ing] legal action in connection with its debt collection efforts" for time-barred debt).

hypothetical language that "could falsely imply that the underlying debt is enforceable in court." *Id.* at 1197 (quotation marks, citation, and alteration omitted). *Stimpson* thus supports the rule that if a debt collector's letter falsely represents, even by implication, that a debt is legally enforceable, it violates the FDCPA.[10]

## 2.

Cascade argues that unless a debt collector "'knew or should have known' that the litigation was time barred," its filing of litigation or threating litigation cannot violate the FDCPA. It further argues that, because of the uncertainty it perceived about which statute of limitations applied to Kaiser's debt, it could not have known the debt was time barred, and thus its collection efforts did not violate the FDCPA. We reject this argument.

The FDCPA makes debt collectors strictly liable for misleading and unfair debt collection practices. *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1175–76 (9th Cir. 2006).[11]   A "knew or should have known"

_____

[10] *Stimpson* reflects an understanding that a debt may continue to exist as a moral obligation even after it becomes legally unenforceable. *See id.* at 1199–1200. Consistent with that understanding, under Oregon law, time-barred debts can sometimes be revived through partial payments. *In re Culver's Est.*, 554 P.2d 541, 543 (Or. Ct. App. 1976). But even where a consumer's debt continues to exist, the FDCPA still prohibits misleading statements about the *legal enforceability* of the debt. *See* 15 U.S.C. § 1692e(2)(A). After the statute of limitations has expired, a debt collector may not "imply[] that a time-barred debt remains legally enforceable." *Stimpson*, 944 F.3d at 1200.

[11] "Congress took care to require an element of knowledge or intent in certain portions of the FDCPA where it deemed such a requirement necessary." *Clark*, 460 F.3d at 1176 n.11 (quoting *Kaplan v. Assetcare,*

standard would create a scienter element for a violation, which is incompatible with strict liability. *S.E.C. v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1256 (9th Cir. 2013) (rejecting a proposed "knew or should have known" standard in the context of strict liability under the Securities Act of 1933). As a result, the plain text of the FDCPA cannot support a "knew or should have known" standard.

Cascade makes three principal arguments to the contrary, none of which persuades us.[12]  First, Cascade invokes a notice of proposed rulemaking by the Consumer Financial Protection Bureau ("CFPB") regarding time-barred debt. The CFPB's proposed regulation would have prohibited suing or threatening to sue on time-barred debt "only if the debt collector knows or should know that the applicable statute of limitations has expired." Debt Collection Practices (Regulation F), 84 Fed. Reg. 23,274, 23,329 (proposed May 21, 2019).

The CFPB recently issued a final rule on this subject, however, which adopts a strict liability approach instead. Debt Collection Practices (Regulation F), 86 Fed. Reg. 5766, 5781 (Jan. 19, 2021) ("The Bureau is not finalizing the proposed knows-or-should-know standard and is instead finalizing a strict liability standard."). The final rule concludes, as we have, that the text of the FDCPA and

---

*Inc.*, 88 F. Supp. 2d 1355, 1362 (S.D. Fla. 2000)). But there is no such element in the provisions at issue here.

[12] Although Cascade also has gestured at a possible First Amendment challenge to the FDCPA's strict liability standard, it has forfeited any constitutional argument by failing to raise the issue "specifically and distinctly" in its brief. *Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 485 (9th Cir. 2010) (quoting *Brownfield v. City of Yakama*, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010)).

existing caselaw support a strict liability standard. *Id.* The final rule also explains how that standard applies to the precise situation we face here: a debt collector that brings a lawsuit will have violated the FDCPA "if a court ultimately determines that the debt was time barred," even if the debt collector previously believed in good faith that the statute of limitations had not expired. *Id.* at 5779.**[13]**

Second, Cascade cites a Sixth Circuit case, which itself cited the CFPB's proposed regulation as "persuasive authority." *Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 898 (6th Cir. 2020). In *Van Hoven*, the Sixth Circuit held that material misrepresentations about state law "must be objectively baseless, not just later proved wrong, to be actionable under the [FDCPA]." *Id.* at 896. As an initial matter, it is not clear *Van Hoven* helps Cascade, because the opinion also observed that "suing on a time-barred debt is objectively baseless." *Id.* But to the extent this observation was intended to reach only situations in which the state courts have conclusively settled which statute of limitation applies to a category of debts, we decline to adopt the objective baselessness standard. That standard—in addition to being inconsistent with the CFPB's

---

**[13]** The final rule has only prospective effect, and so it does not control the disposition in this case. *See* Debt Collection Practices (Regulation F), 86 Fed. Reg. at 5838 ("The Bureau notes that debt collectors may, but are not required to, comply with the final rule's requirements and prohibitions before the effective date [November 30, 2021]."). Our holding follows directly from the statute, not from any legal requirement contained in the final rule. Because our reading of the statutory text leads us to the same conclusion as the final rule, we do not decide what level of deference, if any, a court should afford the rule. *See County of Amador v. U.S. Dep't of the Interior*, 872 F.3d 1012, 1021–22 (9th Cir. 2017) ("[W]e need not decide whether *Chevron* deference (or any other level of deference) is appropriate, because we reach the same conclusion as [the agency] when we review the . . . issue de novo.").

final rule and our caselaw—appears to conflict even with the Sixth Circuit's prior caselaw on strict liability. *See Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 713 (6th Cir. 2015) (stating that a debt collector could violate the FDCPA by seeking fees to which it was not entitled, "even if there was no clear prior judicial statement that it was not entitled to collect the fees" under state law because "a plaintiff does not need to prove knowledge or intent"); *see also Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 448 (6th Cir. 2014) ("The FDCPA is a strict-liability statute.").

Third, Cascade suggests that because its litigation conduct was not sanctionable under the rules of civil procedure, it did not violate the FDCPA. Precedent also forecloses this argument. In *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. 2011), we held that litigation conduct can sometimes violate the FDCPA even without a violation of the rules of civil procedure, let alone a sanctionable violation of those rules. *Id.* at 951. Whether Cascade's conduct would be sanctionable is thus irrelevant.

### 3.

These principles dictate that Kaiser's operative Complaint stated a claim for relief under the FDCPA. Kaiser alleged that Cascade filed litigation to collect on a time-barred debt, which supports a claim for a violation of both the FDCPA's prohibition on misleading debt collection practices and its prohibition on unfair debt collection practices. 15 U.S.C. §§ 1692e, 1692f.

Evaluating the language in Cascade's collection letter, we also conclude that Kaiser has also stated a claim for relief by alleging that the letter threatened to sue on the time-barred debt, and thereby made a false or misleading

statement in violation of § 1692e. The collection letter Kaiser received does not explicitly threaten to sue on the debt. "Nevertheless, a threat need not be express: it can be implied" when interpreting a letter "as a whole." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1064 (9th Cir. 2011).

We interpret communications from debt collectors, as a matter of law, through the eyes of the "least sophisticated debtor." *Id.* at 1061. The least sophisticated debtor has "below average sophistication or intelligence," but possesses "a basic level of understanding and willingness to read with care." *Id.* at 1062 (first quoting *Duffy v. Landberg*, 215 F.3d 871, 874 (8th Cir. 2000); then quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). A plaintiff cannot prevail by asserting a "bizarre" or "idiosyncratic" interpretation. *Id.*

Two aspects of Cascade's letter persuade us that the least sophisticated debtor would read the letter as threatening to sue. First, the letter opens by stating that "[GAT] ha[d] been retained with the authority to file a lawsuit against [Kaiser] for a debt owed . . . to Cascade." That representation clearly contemplates the possibility of litigation to collect on the balance of the debt; otherwise, there would no reason to grant the firm "the authority to file a lawsuit." *See, e.g.*, *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 137 (4th Cir. 1996) (rejecting a debt collector's argument distinguishing between a statement that "a suit 'will be' filed" and a statement that the attorney had "the authority to do so"). Second, the letter asserts that interest will not accrue on Kaiser's debt "unless and until so ordered by a court of competent jurisdiction." To the least sophisticated debtor, "the phrase . . . suggests that, under some set of circumstances applicable to the recipient," a court could

order interest to accrue on the unpaid balance. *Gonzales*, 660 F.3d at 1063.

Cascade emphasizes the letter's statement that "no attorney has personally reviewed the particular circumstances of [Kaiser's] account," but we do not believe this disclaimer dispels the letter's implied threat of litigation. This boilerplate language, known as a *Greco* disclaimer, is primarily relevant to the FDCPA's separate prohibition on "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3). The Second Circuit has held that this disclaimer can undo an implicit representation, created by use of a law firm's stationery, that an attorney has been meaningfully involved in the collection process. *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 364–65 (2d Cir. 2005). Even assuming the *Greco* disclaimer is relevant to Kaiser's claim, here it is insufficient to overcome the impression the least sophisticated debtor could draw from the other sentences in this letter. In particular, no "bizarre" or "idiosyncratic" interpretation would be required for a consumer who reads that a law firm "ha[d] been retained with the authority to file a lawsuit" to conclude that the letter threatened litigation. Cascade's conduct therefore was misleading under § 1692e of the FDCPA.

C.

Cascade may nonetheless be able to avoid liability through the FDCPA's affirmative defense for bona fide errors. To successfully invoke the defense, a debt collector must "show[] by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). As a matter of first impression, we hold that a

mistake about the time-barred status of a debt under state law could qualify as a bona fide error within the meaning of the FDCPA.

1.

We have previously held, in a case involving a mistake of law about the FDCPA's own requirements, that such "a mistake about the law is insufficient by itself to raise the bona fide error defense." *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 779 (9th Cir. 1982). That question is analytically distinct, however, from whether a mistake about the statute of limitations that applies to the debt under *state* law could support a bona fide error defense. *Baker* was never presented with the latter question, so it does not control our disposition here.

2.

Instead, our analysis is guided by the Supreme Court's decision in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010). In *Jerman*, the Supreme Court adopted the rule announced in *Baker* that mistakes about the meaning of the FDCPA itself cannot be bona fide errors. *Id.* at 604–05. Although the Court expressly declined to decide whether the defense could encompass mistakes of state law, *id.* at 580 n.4, its reasoning is informative here.[14]

---

[14] Our sister circuits that have considered the question (all before the Supreme Court's decision in *Jerman*) have reached conflicting results. *Compare Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 451 (8th Cir. 2001) (holding that "a mistake in legal judgment in interpreting and applying" a state statute cannot support a bona fide error defense), *with Johnson v. Riddle*, 305 F.3d 1107, 1121–24 (10th Cir. 2002) (holding that a mistake of state law could be a bona fide error). At least one other circuit has

The Court offered three principal reasons for excluding mistakes about the FDCPA's meaning from the bona fide error defense: (1) background legal principles regarding mens rea; (2) the statutory text; and (3) coherence with another safe-harbor provision in the FDCPA. Considering each, we conclude that mistakes about the status of a debt under a state statute of limitations are substantively different from mistakes about the requirements of the FDCPA itself and therefore can be bona fide errors.

First, *Jerman* relied on the presumption that "ignorance of the law will not excuse any person, either civilly or criminally." *Id.* at 581 (quoting *Barlow v. United States*, 32 U.S. (7 Pet.) 404, 411 (1833)). "This maxim . . . normally applies where a defendant has the requisite mental state in respect to the elements of the crime but claims to be 'unaware of the existence of a statute proscribing his conduct.'" *Rehaif v. United States*, 139 S. Ct. 2191, 2198 (2019) (quoting 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 5.1(a) (1986)). In *Jerman*, for example, the debt collector's mistake was as to the requirements of the very law it had violated; hence, the Court held that this "mistaken interpretation of the legal requirements of the FDCPA" could not support a bona fide error defense. 559 U.S. at 577.

By contrast, the ignorance-of-the-law "maxim does not normally apply where a defendant 'has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct.'" *Rehaif*, 139 S. Ct. at 2198 (quoting 1 LaFave & Scott, *Substantive Criminal Law*

---

assumed arguendo that the defense is available for mistakes of state law. *Ruth v. Triumph P'ships*, 577 F.3d 790, 804 (7th Cir. 2009).

§ 5.1(a)).  In such cases, "where the defendant is ignorant of an independently determined legal status or condition that is one of the operative facts of the crime . . . the mistake of the law is for practical purposes a mistake of fact."  *United States v. Fierros*, 692 F.2d 1291, 1294 (9th Cir. 1982); *see also United States v. Currier*, 621 F.2d 7, 9 n.1 (1st Cir. 1980) (describing earlier cases in which "an apparent 'mistake of law' was actually a 'mistake of fact' [and therefore could be asserted as a defense] in that the mistake pertained to a question of status which was determined by a law other than the one under which the defendant was prosecuted").    Thus, when a crime has a mens rea requirement, a defendant must have that mens rea as to such "a 'collateral' question of law."  *Rehaif*, 139 S. Ct. at 2198.[15]

Cascade has allegedly violated the prohibition against misrepresenting the legal enforceability of the debt, 15 U.S.C. § 1692e, and the prohibition against "unfair" collection tactics, *id.* § 1692f.  These allegations necessarily implicate a legal element entirely collateral to the FDCPA: the time-barred status of the debt under state law.  This collateral legal element falls outside the ignorance-of-the-law maxim described in *Jerman*.

As we have explained, the FDCPA offenses at issue lack a mens rea requirement because the statute imposes strict liability.  But the bona fide error defense is the statute's "narrow exception to strict liability."  *Clark*, 460 F.3d at 1177.    It relieves liability for certain "unintentional" violations, thereby functioning similarly to a mens rea

---

[15] For example, a defendant charged with knowingly receiving stolen goods must know the goods were stolen, because the goods' legal status (*i.e.*, that they were stolen) is a collateral question of law.  *See Liparota v. United States*, 471 U.S. 419, 425 n.9 (1985).

requirement. *See Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433, 441 n.5 (2d Cir. 2018) (explaining that a dispute over mens rea is appropriately considered through the bona fide error defense). These background legal principles therefore suggest the defense should be available for mistakes about the time-barred status of the debt.

Second, *Jerman* observed that nothing in the FDCPA's text explicitly immunizes a debt collector from a mistake of law, and that Congress has not "expressly included mistakes of law in any of the numerous bona fide error defenses" using similar wording "elsewhere in the U.S. Code." 559 U.S. at 583–86, 593 (emphasis omitted). The Court further reasoned that the statute's use of the phrase "procedures reasonably adapted to avoid any such error" is "more naturally read to apply to processes that have mechanical or other such 'regular orderly' steps to avoid . . . errors like clerical or factual mistakes." *Id.* at 587. These observations, standing alone, might suggest that mistakes about a debt's legal status cannot be bona fide errors.

But, as we have explained, a mistake about the time-barred status of a debt is a mistake regarding a collateral legal element of an offense, which we treat as a mistake of fact. *See Rehaif*, 139 S. Ct. at 2198; *Fierros*, 692 F.2d at 1294. And unlike the FDCPA itself, state statutes of limitations are not "comprehensive and complex federal statute[s] . . . that impose[] open-ended prohibitions." *Id.* As a result, debt collectors are likely more able to apply "regular orderly" processes to determine the applicable statute of limitations and "maintain procedures to avoid legal errors," because the required legal reasoning is more often "mechanical or strictly linear" than the legal reasoning involved in interpreting the FDCPA. *Id.* Interpreting the FDCPA's bona fide error defense to include mistakes about

the time-barred status of a debt is thus consistent with the statutory text.

Finally, *Jerman* relied on the fact that the FDCPA contains a safe-harbor provision for debt collectors that act in good faith in conformity with an advisory opinion by the federal agency responsible for FDCPA enforcement. *Id.* at 588 (citing 15 U.S.C. § 1692k(e)). Such a provision, the Court reasoned, would have little use if debt collectors could rely on the bona fide error provision for mistakes of federal law. 559 U.S. at 588. This reasoning seems inapplicable here, because it is unlikely that Congress expected any federal agency to provide advisory opinions addressing state statutes of limitations. *See, e.g.*, Advisory Opinions Pilot, 85 Fed. Reg. 37,331, 37,331 (June 22, 2020) (describing the CFPB's function as "issuing guidance implementing Federal consumer financial law"). Without "a separate provision that, by its plain terms, is more obviously tailored to the concern at issue," the bona fide error defense is the most natural way to address good-faith mistakes regarding state statutes of limitations. *Jerman*, 559 U.S. at 588.

Accordingly, we conclude that mistakes about the time-barred status of a debt can be bona fide errors.

IV.

Because we conclude that Kaiser has stated a claim for relief under the FDCPA, we reverse the district court's dismissal of this action. On remand, Cascade may attempt to invoke the bona fide error defense. We express no opinion on its likelihood of success on such a defense.

**REVERSED AND REMANDED.**

**APPENDIX**



**GORDON, AYLWORTH & TAMI, P.C.**
**ATTORNEYS AT LAW**

*Formerly Daniel N. Gordon, P.C.*

4023 W 1ˢᵗ Avenue
P.O. Box 22338
Eugene, OR 97402

Tel: 541-342-2276
Toll Free: 800-311-8566
Fax: 541-343-8059
email: info@gatlawfirm.com

Michael D Kaiser

**Attorneys and Jurisdictions**
**Daniel N. Gordon***
*ID, OR, WA*
*\*Retired*
**Matthew R. Aylworth**
*ID, OR, WA*
**Eleanor Tami**
*ID, OR, WA*
**Jessica A. Smith**
*OR*

July 15, 2015

Our Reference No. 6011337778
Original Account No. ▉▉▉▉▉▉

Dear Michael D Kaiser:

This firm has been retained with the authority to file a lawsuit against you for a debt owed by you to CASCADE CAPITAL LLC SERIES A, purchaser of your Citi-Serv / Santander Consumer USA Inc. debt. At this time, no attorney has personally reviewed the particular circumstances of your account.

Demand is hereby made upon you for payment in the sum of $5,704.40, which is the amount due on your original obligation at the time it was received for collection in our office. No interest will accrue on this amount unless and until so ordered by a court of competent jurisdiction.

Unless you notify this office within thirty days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you do notify this office within thirty days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request to this office within thirty days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

This communication is from a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose.

Sincerely,
Gordon, Aylworth & Tami, P.C.